# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY R. LUSK,<br><br>**Plaintiff**,<br><br>v.<br><br>FIVE GUYS ENTERPRISES LLC; and ENCORE FGBF, LLC,<br><br>**Defendants**. | CASE NO. 1:17-cv-00762-AWI-EPG<br><br>**ORDER RE PRELIMINARY FAIRNESS EVALUATION**<br><br>(Doc. No. 36) |

## I. Introduction

In this lawsuit an employee, on behalf of himself and a proposed class of his fellow employees, is suing his two employers for violating California wage-and-hour laws and California and federal consumer reporting laws. The employee is Plaintiff Jeremy Lusk, and the employers are Defendant Five Guys Enterprises LLC and Defendant Encore FGBF, LLC (collectively "Defendants").

After Lusk initiated this lawsuit, the parties reached a proposed class action settlement agreement, which the parties then presented to the Court for approval under Rule 23(e) of the Federal Rules of Civil Procedure. Accordingly, now before the Court is Lusk's motion for a preliminary fairness determination of the proposed settlement agreement. For the reasons discussed infra, the Court does not find that the proposed settlement agreement is fair or warrants class treatment.

## II. Background

From approximately August 2016 to November 2016, Lusk worked in California as a manager-in-training for his fast-food restaurant employers, Defendants. In addition to employing Lusk, Defendants also employed a class of at least 2,206 non-exempt employees (hereinafter the "Class") in California from August 2013 to the present. According to Lusk, Defendants violated several California wage-and-hour laws and California and federal consumer reporting laws with

respect to Lusk and the Class. Based on those violations, Lusk filed this lawsuit against Defendants, pleading the following claims:

<u>FCRA, ICRAA, and CCRAA disclosures</u> (first, second, third, and fourth claims): Defendants evaluated Lusk and the Class for potential employment. In doing so, Defendants procured and/or caused to be prepared credit reports, background reports, and investigative consumer reports on Lusk and the Class. Defendants failed to make disclosures to Lusk and the Class that are required under the federal Fair Credit Reporting Act ("FCRA"),[1] California's Investigative Consumer Reporting Agencies Act ("ICRAA"),[2] and California's Consumer Credit Reporting Agencies Act ("CCRAA").[3]

<u>Meal breaks</u> (fifth claim): Defendants failed to provide Lusk and the Class with meal breaks, and Defendants failed to pay premium wages to Lusk and the Class for unprovided meal breaks, thereby violating California's Labor Code.

<u>Rest breaks</u> (sixth claim): Defendants failed to provide Lusk and the Class with rest breaks, and Defendants failed to pay premium wages to Lusk and the Class for unprovided rest breaks, thereby violating California's Labor Code.

<u>Minimum wages and overtime wages</u> (seventh claim): Defendants forced Lusk and the Class to work off-the-clock. Consequently, Defendants failed to pay Lusk and the Class minimum wages and overtime wages, thereby violating California's Labor Code.

<u>Expenditure indemnification</u> (eighth claim): Defendants failed to reimburse Lusk and the Class for necessary vehicle gas and mileage expenditures, thereby violating California's Labor Code.

<u>Wage statements</u> (ninth claim): Defendants failed to provide Lusk and the Class with accurate itemized wage statements, thereby violating California's Labor Code.

<u>Timely payment of final wages</u> (tenth claim): When the employment of Lusk and the Class ended, Defendants failed to timely pay Lusk and the Class all final wages, thereby violating California's Labor Code.

---

[1] FCRA is codified at 15 U.S.C. §§ 1681 <u>et seq.</u>
[2] ICRAA is codified at Cal. Civ. Code §§ 1786 <u>eq seq.</u>
[3] CCRAA is codified at Cal. Civ. Code §§ 1785.1 <u>eq seq.</u>

2

<u>Unfair competition</u> (eleventh claim): On the basis of Defendant's alleged conduct identified <u>supra</u> in the fifth, sixth, seventh, and eighth claims, Defendants engaged in unfair competition, thereby violating California's unfair competition law ("UCL").[4]

<u>PAGA</u> (twelfth claim): On the basis of Defendant's alleged violations of the California Labor Code, Lusk and the Class are aggrieved employees who seek penalties from Defendants on behalf of the State of California pursuant to California's Private Attorney General Act ("PAGA").[5]

After Lusk filed the foregoing claims against Defendants, Lusk and Defendants conducted some discovery. Lusk and Defendants then participated in a mediation with Deborah Crandall Saxe on October 10, 2018. The mediation resulted in the parties agreeing on October 12, 2018, to the terms of a proposed class-wide settlement agreement.

According to Lusk, the "primary material terms" of the proposed settlement agreement are as follows:

1. For purposes of settlement, all of Lusk's claims will be certified for class treatment pursuant to Rule 23(b)(3).

2. As noted <u>supra</u>, the Class consists of at least 2,206 non-exempt employees who worked for Defendants in California from August 2013 to the present. For purposes of the settlement agreement and class notice, the Class will be defined as follows:

   > All persons who, from August 22, 2013, to the date the Court grants preliminary approval of this settlement, have previously been or currently are employed in California by Defendants, whether directly or through an employment agency or a professional services organization, as a non-exempt or hourly employee of Defendants.

3. Lusk will be appointed as the class representative.

4. Lusk's counsel, Shaun Setareh, will be appointed as the class counsel.

5. Defendants will pay $1,200,000 as the "Gross Settlement Amount" in a "claims-based settlement," exclusive of employer-side payroll taxes.

6. Class counsel will apply for a attorney's fee award of up to $400,000, which will be paid from the Gross Settlement Amount.

---

[4] UCL is codified at Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>
[5] PAGA is codified at Cal. Lab. Code §§ 2698 <u>et seq.</u>

3

7. Class counsel will apply for a cost reimbursement of $20,000, which will be paid from the Gross Settlement Amount.

8. Lusk will apply for a class representative enhancement of up to $15,000, which will be paid from the Gross Settlement Amount.

9. A third-party class claims administrator will be hired to provide notice to the Class of the class settlement, and the class claims administrator will be paid a fee of up to $30,000, which will be paid from the Gross Settlement Amount.

10. The PAGA action will be settled for $100,000, with that amount being encompassed within the Gross Settlement Amount. Accordingly, 75% (or $75,000) of the $100,000 PAGA settlement will be paid to the California Labor Workforce Development Agency from the Gross Settlement Amount. The remaining 25% (or $25,000) of the PAGA settlement is included within the remaining $660,000 of the Gross Settlement Amount, discussed infra.

11. The remaining $660,000 of the Gross Settlement Amount will be paid to the non-opt-out members of the Class. Therefore, assuming none of the 2,206 putative class members opt out, then the average settlement payment made to each class member will be approximately $299.18.

12. In consideration for Defendants' payment of the Gross Settlement Amount, the Class will release Defendants from all claims in this lawsuit, which, as noted supra, includes several California wage-and-hour claims as well as multiple California and federal consumer reporting claims.

13. Notice of the proposed settlement agreement will be provided to the Class through the class claims administrator.

After Lusk and Defendants agreed to the terms of the proposed settlement agreement, Lusk moved the Court for a preliminary fairness determination of the proposed settlement agreement pursuant to Rule 23(e)(1).

/ / /

# III. Motion for Preliminary Fairness Determination of Class-Wide Settlement Agreement

Lusk moves the Court to preliminarily approve the parties' proposed settlement agreement. Lusk tells the Court that preliminary approval is warranted because, first, class certification is warranted under Rule 23(b)(3) and, second, the proposed settlement agreement is fair, reasonable, and adequate under Rule 23(e)(2). Lusk's position is as follows.

**A.  Class certification is warranted under Rule 23(b)(3).**

Class certification is warranted under Rule 23(b)(3) because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied. First, the Class of at least 2,206 members is sufficiently numerous. Second, there are questions of law and fact common to the Class with respect to the wage-and-hour claims: namely, (a) whether Defendants failed to provide the Class with compliant meal breaks and rest breaks; (b) whether Defendants paid the Class for all time worked; (c) whether Defendants failed to issue compliant itemized wage statements to the Class; (d) whether Defendants required the Class to work off-the-clock; and (e) whether Defendants failed to pay overtime wages to the Class. Third, those common questions predominate over any individualized questions. Fourth, Lusk's claims against Defendants are typical of the Class's putative claims against Defendants. Fifth, Lusk is an adequate representative of the Class because he has no conflicts of interest with the Class. Sixth, Lusk's attorney, Shaun Setareh, will provide adequate representation to the Class because he has substantial class action experience. Seventh, class certification under Rule 23(b)(3) is a superior method to other alternative methods for the following three reasons: (1) class certification will permit the Class members to aggregate their relatively small respective claims against Defendants; (b) there is no indication that any individual member of the Class has an interest in individually controlling their own claim; and (c) any Class member who wants to pursue a separate lawsuit can opt out.

**B.  The settlement agreement is fair, reasonable, and adequate under Rule 23(e)(2).**

The proposed settlement agreement is fair, reasonable, and adequate under Rule 23(e)(2) for several reasons. First, the proposed settlement agreement was reached after the parties conducted some discovery. Second, the proposed settlement agreement was reached with the help of an experienced neutral mediator. Third, the attorney's fee award of $400,000, which is

5

approximately 33.3% of the Gross Settlement Amount, "represents the fair market value of [Setarah's] labor," and this is largely because Setarah's regular contingent fee contract provides for attorney's fees between 33.3% and 40% of any recovery obtained. Doc. No. 36. Fourth, the $15,000 representative enhancement for Lusk is reasonable because Lusk (1) took the risk of suing his employers, (2) was actively involved in this lawsuit, including the settlement negotiations, and (3) participated in discovery, including being deposed by Defendants. Fifth, the Gross Settlement Amount represents approximately 25% to 30%[6] of Defendant's "estimated exposure" for the rest break claim, meal break claim, timely payment of final wages claim, wage statement claim, and "regular rate claim."[7] This "reduced compromise settlement," according to Lusk, "falls well within the range of reasonable outcomes" because Lusk and the Class will face the following risks if they do not settle and proceed towards adjudication on the merits: (1) the risk that class certification will be denied; (2) the risk that Lusk and the class will fail to prove liability; (3) the risk that "any civil penalties award under the PAGA could be reduced by the Court in its discretion"; and (4) the risk that "lengthy appellate litigation could ensue." Doc. No. 36.

## IV. Legal Standard for Preliminary Fairness Determination under Rule 23(e)(1)

Rule 23(e) requires judicial review and approval of any proposed class action settlement agreement. This requirement is in place because "the parties that are present and settling the case — class counsel, the class representatives, and the defendants — are proposing to compromise the rights of absent class members," and judicial review "aims to ensure that the interests of these absent class members are safeguarded." Newberg on Class Actions § 13:40 (5th ed.). In reviewing the proposed class action settlement, the "judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation." Manual for Complex Litigation § 21.61 (4th ed.). This is

///

---

[6] Lusk's presentation and explanation of the maximum exposure estimates and risk factor discounts were inadequate, as will be discussed infra. As a result, the Court's "25% to 30%" approximation is just that: an approximation.

[7] Lusk did not explain in his motion what he means by the "regular rate claim." Nowhere in Lusk's complaint is there a reference to a "regular rate claim." See generally Doc. No. 13. The Court will assume the reference is to the overtime wages claim.

6

because in the context of a proposed class action settlement, "there is typically no client with the motivation, knowledge, and resources to protect its own interests." Id.

Rule 23(e)(1), as amended in 2018, requires the movant to "provide the court with information" that shows that "the court will likely be able to" make two separate determinations. Fed. R. Civ. P. 23(e)(1). First, approval of the settlement agreement is warranted under Rule 23(e)(2). Second, class certification is warranted under Rule 23(a)-(b) "for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

As for the first determination of whether approval of the settlement agreement is warranted, Rule 23(e)(2) authorizes final approval of class action settlement agreement only if the movant shows that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether the settlement agreement is fair, reasonable, and adequate, the court must consider the following four factors. First, whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Second, whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Third, whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). Fourth, whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment.

For the procedural factors — adequate representation and arm's length negotiation — the following considerations are relevant: (1) the amount of adversarial litigation preceding the proposed settlement agreement; (2) the nature and amount of discovery conducted before the proposed settlement agreement; (3) the conduct of the negotiations, such as the involvement of a neutral mediator; and (4) the award of attorney's fees, including the manner of negotiating the fee. See Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment; see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Richardson v. L'Oreal USA, Inc., 951 F. Supp. 2d 104, 107 (D.D.C. 2013) (emphasizing "substantial" litigation history preceding the settlement).

For the substantive factors — adequate relief and equitable treatment to the class members — the following considerations are relevant: (1) the amount of the settlement in light of the class's potential recovery, discounted by the costs, risks, and delay of trial and appeal; (2) the extent to which the parties have engaged in sufficient discovery to evaluate the merits of the case; (3) the complexity and potential costs of trial; (4) the recommendations of experienced counsel; (5) unreasonably high attorney's fees as well as timing of attorney's fees; (6) unduly preferential treatment of class representatives; (7) deficient notice plan; (8) the effectiveness and burdensomeness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (9) plainly unfair allocation scheme; and (10) overly-broad releases of liability. See Fed. R. Civ. P. 23(e)(2)(C); Newberg on Class Actions § 13:15 (5th ed.); see also Hanlon, 150 F.3d at 1026; City of Seattle, 955 F.2d at 1276.

As for the second determination as to whether class certification is warranted under Rule 23(a)-(b), the court must determine whether it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Accordingly, the court must review the class certification standards under Rule 23(a)-(b), and based on those standards the court must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." Newberg on Class Actions § 13:18 (5th ed.).

## V. Discussion

Based on the information and analysis provided by Lusk to the Court, the Court cannot conclude that the parties' proposed settlement agreement is fair, reasonable, and adequate under Rule 23(e)(2) or will likely warrant class certification under Rule 23(a)-(b). This is largely because Lusk failed to demonstrate that the proposed settlement agreement offers adequate relief to the Class, which is required under Rule 23(e)(2)(C). Additionally, Lusk failed to demonstrate that the expenditure indemnification claim and consumer reporting claims will likely warrant class certification under Rule 23(a)-(b). The Court will address Lusk's most notable failures.

/ / /

**A.     Whether there is adequate relief to the Class.**

Based on the following considerations, the Court cannot conclude that the proposed settlement agreement provides adequate relief to the Class under Rule 23(e)(2)(C).

**(1)     The amount of the settlement in light of the Class's potential recovery, discounted by the risk of adjudication on the merits.**

The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, among others, In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178-79 (9th Cir. 2013)). To determine whether a proposed settlement amount is reasonable, the court must consider the amount obtained in recovery against the estimated value of the class claims if those claims were successfully adjudicated on the merits. See Litty v. Merrill Lynch & Co., Inc., 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (citations omitted); see also Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment ("Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure.").

Here Lusk failed to sufficiently demonstrate that the proposed settlement agreement provides adequate relief to the Class in light of the Class's potential recovery, discounted by the risks of adjudication on the merits. Lusk merely asserts without any meaningful discussion or detail that the claims against the Defendants, if they were to proceed to trial and not settle, would risk the difficulty and uncertainty of being certified under Rule 23(a)-(b) and being proven on the merits. Lusk outlines the perceived risks as follows:

> (i) the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages . . . ; (ii) the risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding . . . ; (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages . . . (v) the risk that any civil penalties award under the PAGA could be reduced by the Court in its discretion

9

> . . . ; (vi) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; and (vii) the risk that lengthy appellate litigation could ensue.
>
> . . . .
>
> First, rest break and meal period claims have been challenging to certify for many years, even after <u>Brinker</u>. Second, off-the clock claims have proven to be extremely difficult to certify by their very nature. Third, certification rates are lower than conventional wisdom holds.

Doc. No. 36.

There are multiple problems with Lusk's foregoing risk assessment, and those problems preclude the Court from concluding that the proposed settlement amount is adequate. First, Lusk's risk assessment merely identifies generalized risks that are inherent and ubiquitous in virtually all wage-and-hour putative class action lawsuits. In other words, Lusk failed to explain with any precision or detail how and why the foregoing risks are at play in this lawsuit. For example, Lusk did not identify and analyze any particular facts or evidence in this lawsuit and then explain how and to what extent those facts and evidence give rise to the foregoing risks. This is problematic. See <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 462 (2d Cir. 1974) (stating that the district court, in reviewing a proposed class action settlement agreement, must "consider and weigh <u>the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable</u>.") (emphasis added). To illustrate this point, consider the following. Lusk asserts that there is a risk that "Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages." Doc. No. 36. But why? Lusk failed to answer, let alone address, this question. Further, Lusk asserts that there is a risk that "Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding." <u>Id.</u> But why? Again, Lusk failed to address and answer this question. Further, Lusk asserts that there is a risk that "individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages." <u>Id.</u> But why? What individual differences? Again, Lusk failed to address and answer these important questions, just as he failed to do for nearly all of the other asserted risks.

Second and related to the first, Lusk's risk assessment fails to meaningfully analyze the risks associated with <u>each claim</u> in this lawsuit, of which there are several. Instead, Lusk simply generalized the asserted risks as if they applied equally and for the same reasons to each of the several claims. But that is unsound: each claim in this lawsuit consists of unique factual elements, and those unique elements are relevant for purposes of analyzing at this preliminary phase the likelihood of proving liability (and establishing that class certification is warranted). The wage-and-hour claims, the expenditure indemnification claim, and the consumer reporting claims all differ substantially from each other, yet Lusk failed to address the specific facts and evidence that weigh in favor for and against Defendants' liability on each claim (as well as establishing that class certification is warranted on each claim).

Third, in light of Lusk's foregoing failures, it follows that Lusk's proposed "risk factor discounts" are meaningless to the Court. Lusk asserts that Defendants' maximum exposure for some (but not all) of the claims should be reduced by a specific "risk factor discount." For example, Lusk estimates that Defendants' maximum exposure for the meal period claim is $872,470.21. Lusk then asserts that there is a "risk factor discount" of 60% (or a $523,482.12 reduction from the maximum exposure) for proving liability on the meal period claim and a risk factor discount of 25% (or a $218,117.55 reduction from the maximum exposure) for establishing that class certification is warranted on the meal period claim. Based on these risk factor discounts for the meal period claim, Lusk tells the Court that a reasonable recovery on the meal period claim is approximately $130,870.53 (<u>i.e.</u>, $872,470.21 – $523,482.12 – $218,117.55 = $130,870.53). Lusk presents similar risk factor discounts for the rest period claim, waiting time claim, wage statement claim, and regular rate claim (but not the remaining claims, such as the expenditure indemnification claim and consumer reporting claims). Lusk is correct that formulating and applying risk factor discounts to maximum exposure estimates is appropriate for determining the fairness of a proposed class action settlement. "The primary way a court determines whether the settlement's value is sufficient is by (1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome." <u>Newberg on Class Actions</u> § 13:51 (5th

ed.) (citing as an example the Seventh Circuit's "Net Expected Value Methodology" in <u>Reynolds v. Beneficial Nat. Bank</u>, 288 F.3d 277, 284-85 (7th Cir. 2002)). But the problem with Lusk's risk factor discounts — and what the Court means when it says that the discounts are "meaningless" — is that they lack any factual and evidentiary foundation. This is because Lusk failed to explain with specific facts and evidence how his proposed risk factor discounts were conceived of and formulated. For example, presumably Lusk believes that the 60% risk factor discount for proving liability on the meal period claim is reflective of certain facts and evidence in this lawsuit that are unfavorable to Lusk and the Class. But Lusk failed to explain, let alone identify, those relevant facts and evidence.[8] In sum, it is insufficient for purposes of demonstrating the adequacy of the settlement's relief to baldly assert, as Lusk has done here, that the Class's relief should be severely reduced from the maximum exposure, all because proving liability and establishing class certification on California wage-and-hour claims has historically been "difficult" and "challenging" in other lawsuits. <u>See, e.g.</u>, Doc. No. 36 (Lusk's motion for preliminary approval stating that (1) "rest break and meal period claims have been challenging to certify for many years, even after <u>Brinker</u>"; (2) "off-the-clock claims have proven to be extremely difficult to certify by their very nature"; (3) "Plaintiff's counsel has assumed estimated certification probabilities of 30% - 40%, depending on the claim, assumptions that substantially exceed the average rate at which cases were certified in California over the study years, based upon data available through the California Courts website"; (4) "[g]iven that well under 20% of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high estimates for certification overstates the realistic current claim value").[9]

---

[8] For the risk factor discounts, "arithmetic accuracy" is not required. <u>See</u> Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment ("Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."). But the discounts must be reasonably based on facts and evidence, and the movant needs to identify and explain to the court the relevant facts and evidence.

[9] To be clear, the Court is not suggesting that other similar lawsuits are irrelevant for purposes of determining the adequacy of proposed relief to the class. Other similar lawsuits can be relevant. <u>See</u> <u>Newberg on Class Actions</u> § 13:51 (5th ed.) ("[I]n evaluating the strength of the plaintiffs' case the court may consider outcomes in similar litigation as providing insight into the present plaintiffs' likelihood of success at trial.") (citing <u>In re Pacific</u>

1    Fourth, like Lusk's proposed risk factor discounts, Lusk's proposed maximum exposure
2 estimates lack meaningful explanation and supporting facts and evidence. Lusk proposes
3 maximum exposure estimates for some (but not all) of the claims. For example, as previously
4 noted, Lusk estimates the maximum exposure for the meal period claim to be $872,470.21. But
5 the only explanation that Lusk provides for this estimate is that it is based on "average wage rates,
6 numbers of employees, and the amount of time covered by the class period." Doc. No. 36-1. This
7 cursory explanation is insufficient. As with the proposed risk factor discounts, the Court requires
8 a meaningful explanation and presentation of the underlying facts, evidence, and calculations that
9 form the basis of the proposed maximum exposure estimates.
10    Fifth, Lusk's failure to address the risk factor discounts and maximum estimate exposures
11 for <u>all claims</u> — including the expenditure indemnification claim, the UCL claim, and the
12 consumer reporting claims — is an obvious deficiency on Lusk's part. The proposed settlement
13 agreement covers all of Lusk's claims, but Lusk's motion failed to address, let alone acknowledge,
14 the expenditure indemnification claim and the consumer reporting claims.

### **(2)** **The extent to which the parties have engaged in sufficient discovery to evaluate the merits of the case.**

17    Class action settlements are favored more when a considerable amount of discovery has
18 been conducted, and this is because the considerable discovery "suggests that the parties arrived at
19 a compromise based on a full understanding of the legal and factual issues surrounding the case."
20 <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012); <u>Nat'l Rural
21 Telecommunications Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 528 (C.D. Cal. 2004); <u>see also</u>
22 Advisory Committee's note to 2018 amendment ("[T]he nature and amount of discovery in this or
23 other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate
24 information base.").
25    Here Lusk asserts that the proposed settlement agreement was reached after some
26 discovery, and the discovery included "formal written discovery; the premediation exchange of

---

28 <u>Enterprises Securities Litigation</u>, 47 F.3d 373, 378 (9th Cir. 1995)). But they are less relevant, and cannot stand in the place of, the specific facts and evidence of the lawsuit under review.

information; numerous communications between the Parties; and the deposition of Plaintiff."
Doc. No. 36. Lusk further asserts that the pre-mediation exchange of information included
"detailed time records for class members." Id. But Lusk's explanation of the discovery conducted
is too generalized to satisfy the Court that the parties, and particularly Lusk, conducted sufficient
discovery.[10] The specific type of discovery and the amount of discovery conducted is important to
the Court for purposes of the preliminary fairness determination. Further, it is not clear to the
Court that the discovery conducted by the parties allowed the parties, and particularly Lusk, to
sufficiently evaluate the merits of each claim.[11] Further, Lusk's failure to even address the
expenditure indemnification claim and consumer reporting claims possibly suggests that no
discovery was conducted as to those claims.

### **(3) Unreasonably high attorney's fees.**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable
costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When
making a preliminary fairness determination of a proposed class action, the court should assess the
reasonableness of the attorney's fee award because "an inordinate fee may be the sign that counsel
sold out the class's claims at a low value in return for the high fee." Newberg on Class Actions §
13:54 (5th ed.) The basic concern is that there has been "a tradeoff between merits relief and
attorney's fees." Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003) (quoting Evans v. Jeff
D., 475 U.S. 717, 732 (1986)); see also Newberg on Class Actions § 13:54 (5th ed.). "A
defendant's willingness to pay high fees may also indicate that the relief in the settlement
undervalues the class's claims, because otherwise it would not be in the defendant's interest to pay
that much." Id.

Here the proposed attorney's fees award of $400,000 is to be paid from the common fund,
namely, the Gross Settlement Amount. A lawyer who recovers "a common fund for the benefit of

---

[10] This conclusion — namely, that Lusk has failed to show that sufficient discovery has been conducted — is also relevant to the procedural factor of adequate representation under Rule 23(e)(2)(A). Therefore, by failing to show that sufficient discovery has been conducted, Lusk has also failed to persuade the Court that there has been adequate representation.

[11] In light of Lusk's deficiencies with the proposed settlement amount and proposed attorney's fees, noted herein, the Court's concerns with the amount of discovery conducted are heightened.

14

persons other than himself or his client" is entitled to reasonable attorney fees from the fund as a whole. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Staton, 327 F.3d at 967. The Supreme Court has explained the rationale underlying the "common fund doctrine" as follows:

> [P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Van Gemert, 444 U.S. at 478 (citations omitted). The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). Consequently, the court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. Id.; see also Rodriguez v. Disner, 688 F.3d 645, 655 (9th Cir. 2012).

The Ninth Circuit has "affirmed the use of two separate methods for determining attorney's fees" in a common-fund case where "the settlement or award creates a large fund for distribution to the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The district court has discretion to choose between the two methods. The first method is the lodestar method. The second method is the "percentage" method, which "means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. For common-fund cases where the percentage method is employed, the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Id. "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

Under the Ninth Circuit model, the 25% benchmark can be adjusted depending on (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards made in similar cases. Id. at 1048-50. A court may also cross-check its percentage calculation against the lodestar method to determine the reasonableness of the award. In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015); Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1264-65 (C.D. Cal. 2016). Whatever the method, the Ninth Circuit counsels only that the fee award be reasonable under the circumstances. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009).

Here Lusk's proposed attorney's fee award of $400,000 is approximately 33.3% of the Gross Settlement Amount. This amount obviously exceeds the benchmark of 25% of the Gross Settlement Amount, which is approximately $300,000. Lusk has failed to demonstrate that the upward adjustment of 8% or $100,000 is warranted.[12] At most, Lusk asserts that the upward adjustment is warranted for the following reasons: (1) Lusk's counsel took this lawsuit on a contingency basis without any guarantee that the lawsuit would prevail against Defendants; (2) Lusk's counsel contributed time and resources to the lawsuit; (3) Lusk's counsel forewent other money-making opportunities in order to handle this lawsuit; (4) other wage-and-hour putative class action lawsuits have experienced "long delays, individual arbitration orders, [and] outright failures" for the plaintiff and the class; (5) Lusk's counsel is experienced in wage-and-hour law, which is a "narrow field" that is "rapidly evolving"; and (6) Lusk's counsel typically requires a 40% contingency fee from his clients. Doc. No. 36-1.

Lusk's stated reasons for the upward adjustment are not persuasive. First, nearly all of the stated reasons can be said to apply for virtually all plaintiff's attorneys in wage-and-hour putative class action lawsuits — meaning Lusk's stated reasons alone do not warrant a unique upward adjustment. The only stated reason that potently carries any weight with the Court is the proposition that Lusk's attorney is experienced in California wage-and-hour litigation, and that

---

[12] This conclusion — namely, that Lusk has failed to demonstrate that the upward adjustment of 8% or $100,000 is warranted — is also relevant to the procedural factors of adequate representation under Rule 23(e)(2)(A) and arm's length negotiation under Rule 23(e)(2)(B). Therefore, by failing to show that the upward adjustment of 8% or $100,000 is warranted, Lusk has also failed to persuade the Court that there has been adequate representation and an arm's length negotiation.

16

California wage-and-hour law is a "narrow" field. See id. The Court does not disagree with Lusk that California wage-and-hour law is a "narrow" field. But many fields of law are "narrow." Thus, the more important question is whether the wage-and-hour law issues in this lawsuit are of sufficient complexity to warrant an upward adjustment, and Lusk has failed to answer that question. From the Court's perspective, a substantial portion of the Court's docket is consumed with California wage-and-hour lawsuits, and those lawsuits are prosecuted, defended, and frequently settled by numerous attorneys throughout this district and California. Based on that perspective, the Court is not convinced that the wage-and-hour issues in this lawsuit warrant a unique departure from the benchmark. If there are unique issues in this lawsuit that warrant a departure, then Lusk failed to bring those issues to the Court's attention with sufficient explanation and supporting evidence.

Second, Lusk failed to demonstrate that the Vizcaino factors identified supra warrant an upward departure. For example, Lusk failed to (1) thoroughly explain how the result obtained in the proposed settlement agreement warrants an upward departure, (2) thoroughly explain (as discussed supra) the risks involved in this lawsuit that warrant an upward departure, (3) thoroughly explain his counsel's efforts in this lawsuit, and (4) identify and discuss the awards that have been made in similar lawsuits in this district and California.

### **(4)** **Overly-broad releases of liability.**

"In every settlement, it will be in defendants' interest to frame the release of claims as broadly as possible. Further, if the settlement is for a sufficient amount, plaintiff may be induced to acquiesce to an overly broad release of claims . . . ." Gonzalez v. CoreCivic of Tennessee, LLC, 2018 WL 4388425, at *12 (E.D. Cal. Sept. 13, 2018). Overly-broad releases of liability may indicate that the class's relief is inadequate and the class's treatment is inequitable. See Fed. R. Civ. P. 23(e)(2)(C); Newberg on Class Actions § 13:15 (5th ed.). Here the proposed settlement agreement releases Defendants from liability on all claims in this lawsuit, including the expenditure indemnification claim and the multiple consumer reporting claims. Yet, in Lusk's motion, Lusk utterly failed to discuss the expenditure indemnification claim and the multiple consumer reporting claims. Further, Lusk's motion suggests that that

proposed settlement agreement does not provide any compensation to the Class for those claims. Because those claims have not been adequately addressed by Lusk, the Court considers the releases of those claims to be overly broad.

**B.      Whether it is likely that the Court will be able to certify the class.**

Lusk failed to address the class certification requirements for the expenditure indemnification claim and the multiple consumer reporting claims, even though the proposed settlement agreement covers those claims.  Further, as noted supra, Lusk failed to sufficiently demonstrate with specific facts and evidence that class certification is warranted for each of the other claims.  Consequently, the Court cannot conclude that it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

# **ORDER**

Accordingly, it is HEREBY ORDERED as follows:

1. Lusk's motion for preliminary approval of the proposed settlement agreement (Doc. No. 36) is DENIED without prejudice;[13]
2. This case is REFERRED BACK to the Magistrate Judge for further scheduling and management.

IT IS SO ORDERED.

Dated:   December 23, 2019

_____
SENIOR DISTRICT JUDGE

---

[13] If the deficiencies discussed in this order can be cured, then Lusk may again move the Court for a preliminary fairness determination.

18