**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JEREMY R. LUSK,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**FIVE GUYS ENTERPRISES LLC; and ENCORE FGBF, LLC,**<br><br>　　　　**Defendants.** | **CASE NO. 1:17-cv-00762-AWI-EPG**<br><br>**ORDER RE PRELIMINARY FAIRNESS EVALUATION**<br><br>(Doc. No. 52) |

## I. Introduction

In this lawsuit, an employee, on behalf of himself and a proposed class of his fellow employees, is suing his two employers for violating California wage-and-hour laws and California and federal consumer reporting laws. The employee is Plaintiff Jeremy Lusk, and the employers are Defendant Five Guys Enterprises LLC and Defendant Encore FGBF, LLC (collectively "Defendants").

After Plaintiff filed this lawsuit, Plaintiff and Defendants reached a proposed class action settlement agreement. Plaintiff moved the Court to preliminarily approve the proposed settlement agreement under Rule 23(e) of the Federal Rules of Civil Procedure. The Court denied Plaintiff's motion, concluding that Plaintiff failed to demonstrate that the proposed settlement agreement was fair and warranted class treatment.

Plaintiff then moved the Court a second time to preliminarily approve a proposed class action settlement agreement. That second motion is now before the Court, and for the reasons discussed below, the Court will deny the second motion.

## II. Background

From approximately August 2016 to November 2016, Plaintiff worked in California as a manager-in-training for his fast-food restaurant employers, Defendants. In addition to employing Plaintiff, Defendants also employed a class of at least 2,206 non-exempt employees (hereinafter

the "Class") in California from August 2013 to the present. According to Plaintiff, Defendants violated several California wage-and-hour laws and California and federal consumer reporting laws with respect to Plaintiff and the Class. Based on those violations, Plaintiff filed this lawsuit against Defendants, pleading the following class claims:

- <u>FCRA, ICRAA, and CCRAA disclosures</u> (first, second, third, and fourth claims): Defendants evaluated Plaintiff and the Class for potential employment. In doing so, Defendants procured and/or caused to be prepared credit reports, background reports, and investigative consumer reports on Plaintiff and the Class. Defendants failed to make disclosures to Plaintiff and the Class that are required under the federal Fair Credit Reporting Act ("FCRA"),[1] California's Investigative Consumer Reporting Agencies Act ("ICRAA"),[2] and California's Consumer Credit Reporting Agencies Act ("CCRAA").[3]

- <u>Meal breaks</u> (fifth claim): Defendants failed to provide Plaintiff and the Class with meal breaks, and Defendants failed to pay premium wages to Plaintiff and the Class for unprovided meal breaks, thereby violating California's Labor Code.

- <u>Rest breaks</u> (sixth claim): Defendants failed to provide Plaintiff and the Class with rest breaks, and Defendants failed to pay premium wages to Plaintiff and the Class for unprovided rest breaks, thereby violating California's Labor Code.

- <u>Minimum wages and overtime wages</u> (seventh claim): Defendants forced Plaintiff and the Class to work off-the-clock. Consequently, Defendants failed to pay Plaintiff and the Class minimum wages and overtime wages, thereby violating California's Labor Code.

- <u>Expenditure indemnification</u> (eighth claim): Defendants failed to reimburse Plaintiff and the Class for necessary vehicle gas and mileage expenditures, thereby violating California's Labor Code.

- <u>Wage statements</u> (ninth claim): Defendants failed to provide Plaintiff and the Class

---

[1] FCRA is codified at 15 U.S.C. §§ 1681 <u>et seq.</u>
[2] ICRAA is codified at Cal. Civ. Code §§ 1786 <u>eq seq.</u>
[3] CCRAA is codified at Cal. Civ. Code §§ 1785.1 <u>eq seq.</u>

with accurate itemized wage statements, thereby violating California's Labor Code.

- Timely payment of final wages (tenth claim): When the employment of Plaintiff and the Class ended, Defendants failed to timely pay Plaintiff and the Class all final wages, thereby violating California's Labor Code.

- Unfair competition (eleventh claim): On the basis of Defendant's alleged conduct identified supra in the fifth, sixth, seventh, and eighth claims, Defendants engaged in unfair competition, thereby violating California's unfair competition law ("UCL").[4]

- PAGA (twelfth claim): On the basis of Defendant's alleged violations of the California Labor Code, Plaintiff and the Class are aggrieved employees who seek penalties from Defendants on behalf of the State of California pursuant to California's Private Attorney General Act ("PAGA").[5]

After Plaintiff filed this lawsuit, Plaintiff and Defendants conducted some discovery. Plaintiff and Defendants then participated in a mediation with Deborah Crandall Saxe on October 10, 2018. The mediation resulted in the parties agreeing on October 12, 2018, to the terms of a proposed class-wide settlement agreement.

Plaintiff then moved the Court to preliminarily approve the proposed settlement agreement under Rule 23(e) of the Federal Rules of Civil Procedure. This motion will be referred to as Plaintiff's "first motion for preliminary approval." The Court denied Plaintiff's first motion for preliminary approval, concluding that Plaintiff failed to demonstrate that the proposed settlement agreement was fair and warranted class treatment. In particular, the Court made the following conclusions. First, Plaintiff failed to sufficiently demonstrate that the proposed settlement agreement provided adequate relief to the Class in light of the Class's potential recovery, discounted by the risks of adjudication on the merits. Second, Plaintiff failed to demonstrate that the parties, prior to agreeing to the proposed class action settlement agreement, engaged in sufficient discovery that allowed the parties, and particularly Plaintiff, to sufficiently evaluate the merits of each claim. Third, the proposed attorney's fee award of $400,000 in the proposed

---

[4] UCL is codified at Cal. Bus. & Prof. Code §§ 17200 et seq.
[5] PAGA is codified at Cal. Lab. Code §§ 2698 et seq.

settlement agreement is approximately 33.3% of the gross settlement amount, which obviously exceeds the Ninth Circuit's common-fund benchmark of 25% of the gross settlement amount. Fourth, in Plaintiff's briefing on the first motion for preliminary approval, Plaintiff failed to address the expenditure indemnification claim and the multiple consumer reporting claims, despite the fact that the proposed settlement agreement would certify those claims for class treatment and release Defendants from liability on those claims.

After the Court denied Plaintiff's first motion for preliminary approval, Plaintiff moved the Court a second time for preliminary approval. This second motion will be referred to as the "second motion for preliminary approval," and it is this second motion that is now before the Court. Plaintiff attached exhibits to the second motion, including a copy of the proposed settlement agreement and a copy of the proposed notice of class action settlement. According to Plaintiff's briefing on the second motion for preliminary approval, a summary of the terms of the second proposed settlement agreement is as follows:

- Class certification: For purposes of settlement, all of Plaintiff's claims will be certified for class treatment pursuant to Rule 23(b)(3).
- Class definition: As noted above, the Class consists of approximately 2,206 non-exempt employees who worked for Defendants in California from August 2013 to the present. For purposes of the settlement agreement and class notice, the Class will be defined as follows:

   > All persons who, from August 22, 2013 through the date of preliminary approval is granted, have previously been or currently are employed in California by Defendants as hourly-paid or "non-exempt" employees ("Employees") disclosed to Plaintiff during mediation and which is roughly 2,206 (two thousand two hundred and six) individuals and does not apply to work performed by any individual during a week in which he/she was classified by Defendants as exempt from overtime compensation. Class members include those employed directly by ENCORE FGBF, LLC or through employment agencies or professional services organizations.

- Class representative: Plaintiff will be appointed as the class representative.
- Class counsel: Plaintiff's counsel, Shaun Setareh, will be appointed as the class counsel.

4

- Class payment: Defendants will pay a maximum of $1,200,000 as the "Gross Settlement Amount." The Gross Settlement Amount covers:
    - a payment to the class representative of $15,000 for compensation for prosecuting this lawsuit;
    - a payment of approximately $760,000 to the class members (i.e., approximately $344.51 per class member, on average);
    - a payment of $100,000 for civil penalties under PAGA, which includes $75,000 awarded to the State of California and $25,000 awarded to qualified claimants;
    - the class members' shares of any applicable payroll taxes, including Defendants' respective shares of any applicable employer payroll taxes, attributable to any payments under the settlement;
    - an award of fees to Plaintiff's counsel not to exceed $300,000 (i.e., not to exceed 25% of the Gross Settlement Amount), plus costs not to exceed $20,000; and
    - fees and expenses not to exceed $30,000 paid to the third-party claims administrator, Phoenix Settlement Administrators.
- Release of liability: In consideration for Defendants' payment of the Gross Settlement Amount, Defendants will be released from liability for all claims in this lawsuit.
- Notice of class settlement: Defendants will provide the claims administrator with the following information about the class members: the members' names, last known mailing addresses, last known telephone numbers, social security numbers, dates of employment, number of workweeks attributable to each class member, and whether each class members' employment with Defendants has ended. After receiving that information from Defendants, the claims administrator will perform a national change of address search, update the class members' addresses based on that search, and mail notice packets to the class members. The notice packets will contain a notice that indicates that the Court granted preliminary approval of the settlement. The notice will

5

provide information concerning this lawsuit and a summary of the settlement's principal terms, including the allocation of the Gross Settlement Amount. The notice will also inform the members of their rights and the manner and deadline to dispute the information in the claim form. The class members will have forty-five days after the packets are mailed by the claims administrator to dispute the information in the notice and elect not to participate in the settlement.

### III. Legal Standard for Preliminary Fairness Determination under Rule 23(e)(1)

Rule 23(e) requires judicial review and approval of any proposed class action settlement agreement. This requirement is in place because "the parties that are present and settling the case — class counsel, the class representatives, and the defendants — are proposing to compromise the rights of absent class members," and judicial review "aims to ensure that the interests of these absent class members are safeguarded." Newberg on Class Actions § 13:40 (5th ed.). In reviewing the proposed class action settlement, the "judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation." Manual for Complex Litigation § 21.61 (4th ed.). This is because in the context of a proposed class action settlement, "there is typically no client with the motivation, knowledge, and resources to protect its own interests." Id.

Rule 23(e)(1), as amended in 2018, requires the movant to "provide the court with information" that shows that "the court will likely be able to" make two separate determinations. Fed. R. Civ. P. 23(e)(1). First, approval of the settlement agreement is warranted under Rule 23(e)(2). Second, class certification is warranted under Rule 23(a)-(b) "for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

As for the first determination of whether approval of the settlement agreement is warranted, Rule 23(e)(2) authorizes final approval of class action settlement agreement only if the movant shows that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether the settlement agreement is fair, reasonable, and adequate, the court must consider the following four factors. First, whether "the class representatives and class

1  counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  Second, whether
2  "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Third, whether "the
3  relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2)(C).  Fourth, whether "the
4  proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The
5  first and second factors are viewed as "procedural" in nature, and the third and fourth factors are
6  viewed as "substantive" in nature.  Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018
7  amendment.

8  For the procedural factors — adequate representation and arm's length negotiation — the
9  following considerations are relevant: (1) the amount of adversarial litigation preceding the
10 proposed settlement agreement; (2) the nature and amount of discovery conducted before the
11 proposed settlement agreement; (3) the conduct of the negotiations, such as the involvement of a
12 neutral mediator; and (4) the award of attorney's fees, including the manner of negotiating the fee.
13 See Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment; see also Hanlon v.
14 Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); Class Plaintiffs v. City of Seattle, 955 F.2d
15 1268, 1276 (9th Cir. 1992); Richardson v. L'Oreal USA, Inc., 951 F. Supp. 2d 104, 107 (D.D.C.
16 2013) (emphasizing "substantial" litigation history preceding the settlement).

17 For the substantive factors — adequate relief and equitable treatment to the class members
18 — the following considerations are relevant: (1) the amount of the settlement in light of the class's
19 potential recovery, discounted by the costs, risks, and delay of trial and appeal; (2) the extent to
20 which the parties have engaged in sufficient discovery to evaluate the merits of the case; (3) the
21 complexity and potential costs of trial; (4) the recommendations of experienced counsel; (5)
22 unreasonably high attorney's fees as well as timing of attorney's fees; (6) unduly preferential
23 treatment of class representatives; (7) deficient notice plan; (8) the effectiveness and
24 burdensomeness of any proposed method of distributing relief to the class, including the method
25 of processing class-member claims; (9) plainly unfair allocation scheme; and (10) overly-broad
26 releases of liability.  See Fed. R. Civ. P. 23(e)(2)(C); Newberg on Class Actions § 13:15 (5th ed.);
27 see also Hanlon, 150 F.3d at 1026; City of Seattle, 955 F.2d at 1276.

28 As for the second determination as to whether class certification is warranted under Rule

23(a)-(b), the court must determine whether it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).  Accordingly, the court must review the class certification standards under Rule 23(a)-(b), and based on those standards the court must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." Newberg on Class Actions § 13:18 (5th ed.).

## IV.  Discussion

Based on the information provided by Plaintiff to the Court in the second motion for preliminary approval, the Court will not conclude at this time that the proposed settlement agreement is fair, reasonable, and adequate under Rule 23(e)(2).  This is because Plaintiff's description in the motion briefing of the settlement agreement's terms and the class notice's terms is at odds with the terms in the actual proposed settlement agreement and the actual proposed class notice.  For example, in Plaintiff's motion briefing, Plaintiff tells the Court that the attorney's fees award will be $300,000. See Doc. No. 52 at 7, 11.  However, in the proposed settlement agreement, the attorney's fees provision states that the award may total $420,000, and in the proposed class notice, the attorney's fees provision states that "Class Counsel will request an award of 33 1/3% of [$1,200,000], equal to $400,000." See Doc. No. 52-1 at 28 (proposed settlement agreement); id. at 52 (proposed class notice)..

Similarly, in Plaintiff's motion briefing, Plaintiff tells the Court that the class payment may total approximately $760,000 (i.e., approximately $344.51 per class member, on average).  See Doc. No. 52 at 9, 11.  However, according to the terms in the proposed settlement agreement and the proposed class notice, the class payment will total no more than approximately $660,000 (i.e., approximately $299.18 per class member, on average). See Doc. No. 52-1 at 28-29 (proposed settlement agreement); id. at 50-52 (proposed class notice).

Similarly, in Plaintiff's motion briefing, Plaintiff tells the Court that the class is defined as follows:

> All persons who, from August 22, 2013 through the date of preliminary approval is granted, have previously been or currently are employed in California by Defendants as hourly-paid or "non-exempt" employees ("Employees") disclosed to Plaintiff during mediation and which is roughly 2,206 (two thousand two hundred

8

> and six) individuals and does not apply to work performed by any individual during a week in which he/she was classified by Defendants as exempt from overtime compensation. Class members include those employed directly by ENCORE FGBF, LLC or through employment agencies or professional services organizations.

Doc. No. 52 at 10-11. However, in the actual proposed settlement agreement, the class is defined as follows:

> All persons who, from August 22, 2013, to the date the Court grants preliminary approval of this settlement, have previously been or currently are employed in California by Defendants, whether directly or through an employment agency or a professional services organization, as a non-exempt or hourly employee of Defendants.

Doc. No. 52-1 at 32. And in the actual proposed class notice, the class is defined as follows:

> All persons who, during the Class period (August 22, 2013 through <PRELIMINARY APPROVAL DATE>), have previously been or currently are employed in California by Defendants as hourly-paid or "non-exempt" employees ("Employees"). Class members include those employed directly by Defendants or through employment agencies or professional services organizations.

Id. at 49.

It appears to the Court that in Plaintiff's second motion for preliminary approval, Plaintiff simply reused the copies of the proposed settlement agreement and the proposed class notice that Plaintiff presented to the Court in the first motion for preliminary approval — even though the Court explicitly rejected certain terms in the first proposed settlement agreement and first proposed class notice, such as the attorney's fees award. This is unacceptable by Plaintiff because, as discussed above, Plaintiff's second motion for preliminary approval describes a settlement agreement and class notice that are at odds with the actual terms of the proposed settlement agreement and proposed class notice. If Plaintiff again moves the Court for preliminary approval of a settlement agreement and proposed class notice, then Plaintiff is expected to provide the Court with copies of a proposed settlement agreement and proposed class notice that actually support and mirror the motion's description of the settlement agreement and class notice.

/ / /

# **ORDER**

Accordingly, it is HEREBY ORDERED as follows:

1. Plaintiff's second motion for preliminary approval (Doc. No. 52) is DENIED without prejudice;[6]

2. This case is REFERRED BACK to the Magistrate Judge for further scheduling and management.

IT IS SO ORDERED.

Dated: __October 17, 2020__                              _____
                                                                                    SENIOR DISTRICT JUDGE

---

[6] If the deficiencies discussed in this order can be cured, then Plaintiff may again move the Court for a preliminary fairness determination.