UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEREMY R. LUSK,**<br><br>            **Plaintiff,**<br><br>      v.<br><br>**FIVE GUYS ENTERPRISES LLC; AND ENCORE FGBF, LLC,**<br><br>            **Defendants.** | CASE NO. 1:17-cv-00762-AWI-EPG<br><br>**ORDER ON PLAINTIFF'S THIRD-AMENDED MOTION FOR PRELIMINARY APPROVAL**<br><br>(Doc. No. 75) |

In this class action lawsuit, Jeremy Lusk is suing Five Guys Enterprises LLC and Encore FGBF, LLC, on grounds that they violated federal and California credit/consumer reporting laws, California wage-and-hour laws, and California unfair competition law.  Although the parties have reached a proposed class settlement, the Court has denied Lusk's first three motions under Federal Rule of Civil Procedure 23(e) for preliminary approval of the settlement and conditional certification of the putative class.  Lusk now moves a fourth time for such relief.  For the reasons discussed below, the Court will deny this motion.

**BACKGROUND**

Lusk filed his lawsuit in state court on May 2, 2017, and Defendants removed the action. Thereafter, Lusk filed a first-amended complaint, wherein he pleaded the following twelve class claims:  (1) failure to make a proper disclosure, in violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A); (2) failure to provide a proper summary of rights, in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681d(a)(1) and 1681g(c); (3) failure to make a proper disclosure, in violation of California's Investigative Consumer Reporting Agencies Act,

Cal. Civ. Code § 1786.16(a)(2)(B); (4) failure to make a proper disclosure, in violation of California's Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.20.5(a); (5) failure to provide meal periods or compensation in lieu thereof, in violation of Cal. Labor Code §§ 226.7, 512, and 1198, and California Industrial Welfare Commission Wage Order 5-2001 ("Wage Order 5"); (6) failure to provide rest periods or compensation in lieu thereof, in violation of Cal. Labor Code §§ 226.7 and 1198, and Wage Order 5; (7) failure to pay earned wages, including overtime wages, in violation of Cal. Labor Code §§ 204, 223, 510, 1194, 1197, and 1198, and Wage Order 5; (8) failure to reimburse for necessary gas and mileage expenditures, in violation of Cal. Labor Code § 2802(a); (9) failure to provide accurate itemized wage statements, in violation of Cal. Labor Code § 226; (10) failure to pay separation wages, in violation of Cal. Labor Code §§ 201–203; (11) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (12) entitlement to civil penalties under California's Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 et seq. Doc. No. 13 ("FAC").

      After conducting some discovery, the parties participated in mediation and reached a proposed agreement for a class-wide settlement. Doc. No. 29. Lusk has since moved three times for preliminarily approval of that proposal and conditional certification of the putative class, with the Court denying each motion. Doc. Nos. 36, 43, 52, 55, 61, 66. Lusk now moves for the same relief for a fourth time. Doc. No. 75 ("Motion").[1] With his latest motion, Lusk submits a supporting declaration from counsel, which itself comes with attached copies of the proposed class settlement, class notice, and class member claim form. Doc. No. 76 ("Setareh Decl."); Doc. No. 76-1.[2] For the first time, Defendants have submitted a statement of non-opposition and supplemental briefing on Lusk's motion, along with a declaration from counsel. Doc. No. 78; Doc. No. 78-1 ("Woo Decl.").

---

[1] In this order, citations to specific page numbers of Document No. 75 will refer to the pdf pagination of that document, and not the pagination used in the motion itself.

[2] The settlement, class notice, and claim form are all found at the same docket number. Doc. No. 76-1 at 1–25 ("Proposed Settlement"); 27–32 ("Settlement Notice"); 34–35 ("Claim Form"). Lusk has also separately submitted a fully executed copy of the proposed settlement. Doc. No. 80-1.

2

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement. This process generally involves three stages. In the first, the parties move for "preliminary approval" of the proposed settlement and, if necessary, "conditional certification" of the class. 4 William B. Rubenstein, Newberg on Class Actions § 13:16 (5th ed.). If the court grants this threshold relief, the second and third stages require (1) the provision of notice to the class members, along with an opportunity for them to object to or opt out of the proposed settlement, and (2) a "final approval" determination (and actual class certification, if necessary) following a fairness hearing. Id.

To secure preliminary approval and condition certification, the parties must provide sufficient information for the court to determine that it "will likely be able to" grant final approval of the settlement under Rule 23(e)(2) and certify the class for a judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B). As to the first determination, Rule 23(e)(2) states that a binding class settlement may be approved only on finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As to the second determination, a class may be certified if it meets the four prerequisites under Rule 23(a) and at least one of the three categories of class actions under Rule 23(b). Fed. R. Civ. P. 23(a)–(b).

The court's role in the class settlement process is an important one, as "the parties that are present and settling the case—class counsel, the class representatives, and the defendants—are proposing to compromise the rights of absent class members." Newberg on Class Actions § 13:40. To ensure the interests of the absent class members are properly safeguarded, the "judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation." Id. (quoting Manual for Complex Litigation § 21.61 (4th ed.)).

## DISCUSSION

The Court will deny Lusk's latest motion because, once again, he has not provided sufficient information showing that the proposed settlement is likely to be approved as "fair,

3

reasonable, and adequate" upon certification of the class under Rule 23.

### A.     Preliminary Approval

As noted above, at the preliminary approval stage, the court need only determine that the proposed settlement is "likely" to be finally approved under Rule 23(e)(2). Rule 23(e)(2) itself provides that a court may approve a class-binding settlement only on finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before making such a finding, courts must consider whether:  (1) the class representative and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate in light of the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement made in connection with the proposal; and (4) the proposal treats class members equitably relative to each other. Id.; see also In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoted source omitted) (enumerating additional non-exhaustive factors that are to be considered for purposes of granting final approval of a class settlement).

While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining whether preliminary approval is warranted, doing so often proves useful given the role these factors play in final approval determinations. The court may also consider any other topic that it regards as pertinent to determining whether the proposed settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Naturally, the showing of fairness of a proposal will vary from case to case. Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 946. Where a settlement has been negotiated before certification, however, there exists "an even greater potential for a breach of fiduciary duty owed the class during settlement," which means "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Id.

In its order denying Lusk's third motion, the Court raised numerous concerns it had

regarding the proposed settlement. Many of these have since been adequately addressed by the parties and warrant no extended discussion here.[3] Because others have not, however, the Court must again address lingering issues regarding the adequacy of class relief and the treatment of putative class members.

### 1.     Adequacy of Class Relief

The relief obtained by the class is often described as the most important part of a class settlement. Carlin v. DairyAmerica, Inc., 380 F. Supp. 3d 998, 1011 (E.D. Cal. 2019). To determine whether proposed relief is fair and reasonable, the court compares the amount that will be recovered with the estimated value of the class claims if they were to be successfully litigated. Id. (cited source omitted). As part of this comparison, the court must gauge the relative strength of the plaintiff's case as "[e]ven a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 611 (E.D. Cal. 2015) (collecting cases approving settlements that were assumed to be fractions of the maximum potential recovery); see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (quoted source omitted)).

---

[3] To make a record, the Court recognizes that Lusk has adequately addressed both the risks attendant to the class claims based on credit reporting statutes and unpaid wages (and assigned nominal or zero value to these claims), and the calculated number of meal and rest period violations in light of permissible recovery under Labor Code § 226.7 for such claims. The parties have also revised the Settlement Notice and the Claim Form to include the credit reporting statutes amongst the extended list of released claims. Doc. No. 76-1 at 29, 35. And Lusk has submitted evidence showing that the proposed settlement, with its latest revisions, was submitted to the California Labor and Workforce Development Agency for purposes of the PAGA claim. Setareh Decl., ¶ 34; Doc. No. 76-2. Finally, as to that claim, the Court remains unconvinced by Lusk's citation to Labor Code § 2699(e)(2)—and the authority it bestows on courts to discretionarily decrease unjust and oppressive PAGA awards—as justification for his substantial reduction of the PAGA claim from a (newly calculated) value of $5,144,450 to $100,000 in the proposed settlement. Lusk's citation to Cotter v. Lyft, Inc., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016), is also inapt, in so far as the court there approved of a (less) drastic reduction of a PAGA claim while citing § 2699(e)(2) because the case was premised on an employee-independent contractor question for which there was "no straight answer" under California law. Lusk does not draw this case parallel to that aspect of Cotter, and the Court finds no basis for him to have even tried. All that said, the Court finds that the math proposed here will suffice given other case law approving small PAGA awards within a much larger class settlement. See Attia v. Neiman Marcus Grp., Inc., No. 8:16-cv-00504-DOC (FFM), 2019 WL 13089601, at *8 (C.D. Cal. Feb. 25, 2019).

### a.   The UCL Claim

In past motions, Lusk has not addressed the value and risks of the UCL claim. Doc. No. 43 at 13; Doc. No. 66 at 12. In his latest motion, Lusk takes steps to solve this continuing problem. Motion at 38–39. Namely, he explains that, as pleaded, the UCL claim is entirely derivative of some of the Labor Code claims, which in turn means that it carries all the risks that attach to those underlying allegations. FAC, ¶¶ 173–174 (incorporating meal period, rest period, unpaid wages, and unreimbursed expenses allegations for purposes of the UCL claim). The Court credits this explanation, but still finds no information within Lusk's greater potential recovery analysis regarding the estimated value of the UCL claim. Motion at 24–26. Without this information, the Court is left to surmise that the claim is worthless. This is exactly where the Court was with Lusk's last motion as well. In denying that motion, the Court informed Lusk that if this claim is in fact entirely without merit, he needs to explain why that is the case and why the Court should approve of the proposed settlement's broad release of UCL claims for nothing in return. Doc. No. 66 at 12. Lusk can add to that task an explanation for why the UCL claim is considered worthless when it is based entirely on the same Labor Code allegations that populate claims he estimates are collectively worth over $4.5 million. See also Cal. Bus. & Prof. Code § 17205 ("Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.").

### b.   Class period

The Court previously expressed concern with the parties' proposal to define the applicable class period as "the period of time from August 22, 2013 through the date of Preliminary Approval of the Settlement." Doc. No. 66 at 14–16. As the Court explained, this open-ended class period threatened to both undervalue the class claims and release other claims that were being assigned no value in the proposed settlement. Id. The parties have responded to this concern by newly defining the applicable class period as "the period of time from August 22, 2013 through October 19, 2020." Proposed Settlement, ¶ 4.

This revision cures the problem with an open-ended class period.  But the Court is unconvinced that the parties have used the correct end date.  Lusk justifies that choice by noting that the Court denied his second motion for preliminary approval on October 19, 2020.  Motion at 16.  Yet, his successive motions suggest that the value of the class claims has remained largely unchanged since the parties reached their settlement agreement on October 12, 2018.  Compare Doc. No. 36 at 20, with Doc. No. 52 at 18–19, and Motion at 24–26.  In other words, the Court's October 19, 2020 order seemingly has nothing to do with Lusk's valuation of the claims.  Like before, the Court suspects that the failure to account for this two-year span represents an undervaluation of the claims.  And as the Court previously explained, undervaluing the claims in this fashion also comes with a gratuitous release of potential claims that could have been raised to secure the recovery that is being overlooked here.[4]

### 2.     Equitable Treatment of Class Members

Rule 23(e) requires examination of whether a proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  To consider this factor, the court assesses whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  Taafua v. Quantum Glob. Techs., LLC, No. 18-cv-06602-VKD, 2021 WL 579862, at *7 (N.D. Cal. Feb. 16, 2021) (quoted source omitted).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment.

In denying Lusk's third motion, the Court explained that the proposed settlement was not equitably treating class members because settlement shares failed to reflect apparent distinctions

---

[4] Adding confusion, Lusk indicates in his motion that if October 19, 2020, is used as the end date of the class period, the putative class expands from 2,206 to approximately 3,629 class members.  Motion at 14 n.1.  Despite acknowledging this relatively massive expansion of the putative class, Lusk continues to calculate the estimated value of the class claims using the lower figure.  Motion at 24–26.  This itself leads to the claims being undervalued and the return for class members being overstated in the instant motion.

7

amongst the class members based on the class claims. Doc. No. 66 at 17. As one example, the Court highlighted the proposal to equally split compensation for the separation wages claim across the entire putative class despite more than 40% of the class not having had a termination event during the class period that would entitle them to relief under Labor Code § 203. The parties responded to this problem by revising the proposed settlement. Namely, the proposed settlement now dictates that 25% of the net settlement amount will be allocated for equal distribution amongst those class members who experienced a termination event during the class period, while the remaining 75% will be allocated for equal distribution amongst all class members. Proposed Settlement, ¶ 15. Their solution fixes part of the problem, but leaves unaddressed the Court's stated concern that the same problem existed with other class claims that appear to disparately affect class members. For instance, in the greater potential recovery analysis, Lusk indicates that the value of the wage statement claim is premised, in part, on 996 first violations of Labor Code § 226. Motion at 24. This number (996)—which matches the number of aggrieved employees for purposes of the PAGA claim—is substantially less than the number of putative class members (2,206). Once again, this math concerns the Court in so far as it projects that some class members will receive a windfall at the expense of other class members. As the Court has noted, Lusk's pleading of separate subclasses for the meal period, rest period, unreimbursed expenses, wage statement, and separation wages claims seems to recognize this precise problem. FAC, ¶¶ 20, 95, 108, 111, 119, 140, 143, 159, 167. The parties' revision of the proposed settlement accounts for one of these claims, but their neglect of the others is left unexplained with clear red flags present.

**B.      Conditional Certification**

Rule 23 of the Federal Rules of Civil Procedure imposes a two-step test for deciding whether a class may be certified. Under the first step, the court determines whether the moving party has established four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

8

Fed. R. Civ. P. 23(a)(1)–(4).  If these prerequisites are met, the court considers whether the proposed class action meets at least one of the three provisions of Rule 23(b).  Fed. R. Civ. P. 23(b).  Lusk seeks certification under Rule 23(b)(3), which states that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As for this preliminary stage, where a settlement class has not already been certified, the court must determine that it will "likely be able to . . . certify the class for purposes of judgment on the proposal following the final approval hearing."  Fed. R. Civ. P. 23(e)(1)(B).  To make such a determination, the court needs "a suitable basis in the record."  Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

Big picture, the Court's task at hand is to project whether Lusk will be able to establish at a final approval hearing that his claims are typical of the class claims and that common questions predominate over individualized inquiries.  Acosta v. Evergreen Moneysource Mortg. Co., No. 2:17-CV-00466-KJM-DB, 2018 WL 3831004, at *2 (E.D. Cal. Aug. 13, 2018); Mitchinson v. Love's Travel Stops & Country Stores, Inc., No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *4 (E.D. Cal. Dec. 22, 2016).  It is also generally recognized that class certification must be proved by a preponderance of the evidence.  Martin v. Sysco Corp., 325 F.R.D. 343, 354 (E.D. Cal. 2018).  With that challenge looming, the Court has expressed concern with its ability to actually certify this class based on the evidentiary record.  Doc. No. 66 at 21–23.  Although they recognize this concern in their latest briefing, the parties have done little to dispel the Court's lingering apprehension.[5]

To start, counsel for Lusk once again describes the parties' evidentiary efforts in rather conclusory fashion, stating:

> [t]he Parties conducted significant and extensive investigation of the facts and law during the prosecution of this action.  Such investigation included formal written

---

[5] As noted in the last order and above, the Court remains concerned with the lack of subclass treatment for certain class claims and this concern applies in the certification context as well.  Doc. No. 66 at 21.  Lusk does not address this problem in his latest motion.

       discovery by both Parties and the production of the class list and almost 1,000
       pages of documents (which included Defendants' meal period and rest break
       policies, along with the relevant employee handbook, time punch records and wage
       statements), as well as Plaintiff's videotaped deposition.

Setareh Decl., ¶ 7. Counsel for Defendants offers something similar in his own declaration. Woo Decl., ¶¶ 4–8. While these descriptions are themselves uninspiring, what the Court finds truly troubling is defense counsel's submission of sworn declarations from sixty-nine putative class members. Id., ¶ 9, Ex. B. Lusk has previously referred to these declarations to emphasize significant risks attendant to certain class claims. He does the same here. Motion at 28, 30, 32. Defendants then do him one better by using the declarations in their statement of non-opposition to support their assertions that the class claims are wholly meritless because Lusk has no evidence to support his legal theories. Doc. No. 78 at 5–11.[6] Defendants' non-opposition is clearly designed to assist Lusk's argument that evidence-related risks demonstrate that the proposed settlement is fair and reasonable. But in providing that help, Defendants have also re-emphasized the exact problem the Court described in its last order regarding a seeming dearth of evidence that will be available for the Court to use to certify the class under Rule 23.

     All of this leaves the Court in a complicated position. Across multiple motions, Lusk has offered next to nothing to show that the prospects for certification are adequately supported by the record, and Defendants have now made his task even harder by presenting evidence that directly undermines his certification position. Notwithstanding, the Court could provide conditional certification on the ground that the class claims follow a familiar format to claims that frequently garner certification. Yet, in so doing, the Court is concerned that the record presented for certification and final approval of the settlement will be as barren as the parties' current descriptions suggest. If it is, and the collective evidence shows Lusk as the lone putative class member who suffered from the alleged harms, there will be no grounds for the Court to conclude that his claims are typical of those possessed by the broader class. Rather, Lusk's own claims will, by definition, represent individualized inquiries as opposed to predominating common

---

[6] Defendants further bolster their assertions with excerpts of Lusk's deposition and their employee handbooks and meal and rest break policies. Doc. No. 78 at 5–11; Woo Decl., ¶¶ 6, 13, Ex. A, Ex. C. Lusk, for his part, also notes how the written materials pose risks to certain class claims.

1 questions of law or fact.  In other words, certification will not be possible, as Lusk will not have
2 shown by a preponderance of the evidence that the requirements of Rule 23(a) and (b)(3) are met.
3 And all that will be left is potential confusion moving forward.  Rodriguez v. Penske Logistics,
4 LLC, No. 2:14-cv-02061-KJM-CKD, 2017 WL 4132430, at *4 (E.D. Cal. Sept. 19, 2017).

### C. Conclusion

The Court's role in its current position is to cautiously and rigorously scrutinize this attempt to settle a class action before the putative class has been certified.  Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019).  In doing that here, the Court will deny Lusk's latest motion seeking preliminary approval and conditional certification for the reasons discussed above.  The Court also requests that the parties carefully consider how they would like to proceed before another motion of this kind is immediately filed.  At this point, Lusk appears to be doing himself and the putative class he seeks to represent a disservice by trying to fit a square peg in a round hole.  The Court does not find clear signs of collusion here.  Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 946.  But it faces a perverse set of circumstances where Defendants are willing to pay more than $1 million to settle the class claims despite their briefing and all presented evidence singly pointing to a complete lack of merit in those claims.  This seeming incongruity could have a few different explanations, from an undervaluing of the class claims to a nuisance fee agreement of low-merit claims.  The Court also recognizes the possibility that this prolonged inability to secure preliminary approval and conditional certification is a result of insufficient effort to lay a foundation for such relief.  If that is the case, an appropriate path forward may include additional pre-certification discovery.  Manual for Complex Litigation §§ 21.14, 21.141. Regardless of the precise steps taken, however, the Court will not further consider a new motion that merely tinkers with the same details that have now been inadequately presented to the Court four times.  In other words, to seek this form of relief in the future, Lusk must substantively account for the problems discussed in this order—including, importantly, a suitable basis in the record for certification—even if doing so first requires the parties to return to the negotiating table or conduct more discovery.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Lusk's third-amended motion for preliminary approval and conditional certification (Doc. No. 75) is DENIED without prejudice; and

2. This case is referred back to the magistrate judge for further scheduling and management.

IT IS SO ORDERED.

Dated:  January 22, 2022                                          

SENIOR DISTRICT JUDGE