Shaun Setareh (Cal. State Bar No. 204514)
  shaun@setarehlaw.com
William M. Pao (Cal. State Bar No. 219846)
  william@setarehlaw.com
Jose Maria D. Patino, Jr. (Cal. State Bar No. 270194)
  jose@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
JEREMY R. LUSK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| JEREMY R. LUSK, on behalf of himself, all others similarly situated, and the general public,<br><br>*Plaintiff,*<br><br>vs.<br><br>FIVE GUYS ENTERPRISES, LLC, a Delaware limited liability company; ENCORE FGBF, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>*Defendants.* | Case No. 1:17-cv-00762-JLT-EPG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with the Declarations of Shaun Setareh, Andrew H. Woo, and [Proposed] Order Granting Final Approval of Class Action Settlement and Entering Judgment*]<br><br>Date:          May 15, 2023<br>Time:         1:30 p.m.<br>Place:        Courtroom 4<br>Judge:       Hon. Jennifer L. Thurston |

# TABLE OF CONTENTS

*Page*

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM IN SUPPORT OF MOTION ......................................................................1

I.      INTRODUCTION/SUMMARY OF ARGUMENT ........................................................1

II.     BACKGROUND ..............................................................................................................2

III.    THE SETTLEMENT .......................................................................................................4

        A.      The Settlement Class ............................................................................................4

        B.      Notice Process ......................................................................................................5

        C.      Maximum Settlement Amount and Distributions. ...............................................5

        D.      Scope of the Class Member Releases ...................................................................7

IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL............................8

        A.      The Best Practical Notice of Settlement Has Been Provided to the Class ...........8

        B.      The CAFA Notice Requirements Have Been Satisfied ........................................8

        C.      Final Approval Standards under Rule 23 ..............................................................9

        D.      The Settlement Is Presumptively Fair Because of the Positive Response to the
                Settlement by Class Members, the Significant Investigation Conducted, Class
                Counsel's Experience, and Arm's-Length Negotiations ....................................10

                1.      Class Members' Response to the Settlement Is Positive..........................10

                2.      The Settlement Was Reached Only After the Parties Engaged in Substantial
                        Investigation and Analysis of the Legal Issues.......................................11

                3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight ....11

                4.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-
                        Length Negotiations. ..............................................................................11

                5.      The Settlement Provides Substantial, Certain Benefits and Avoids the Risk,
                        Cost, Delay, and Burden of Further Litigation. ......................................12

                        a.      The Value of the Settlement Favors Final Approval.....................12

                        b.      Further Litigation Would Involve Risk, Expense, Delay, and Burden
                                on Class Members. ......................................................................13

V.      THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES,
        REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD .................13

A.      The Legal Standard for Attorneys' Fee Awards ........................................................13

B.      The Fee Award Is Reasonable and Should Receive Final Approval .....................14

     1.      An Excellent Result Was Achieved on Behalf of the Class .....................14

     2.      The Experience, Reputation, and Ability of Class Counsel ....................16

     3.      The Effort Required by the Litigation Justifies the Fee ...........................17

     4.      The Complexity of the Legal and Factual Issues .....................................17

     5.      Class Counsel Assumed Substantial Risk ...............................................18

     6.      The Fee is Reasonable Under the Common Fund Doctrine ....................18

         a.      The standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases .....................................18

         b.      Plaintiff seeks 25% of the Settlement Fund in fees and costs less than $20,000. ....................................................................................................19

     7.      A Lodestar Analysis Supports the Requested Fee ..................................20

     8.      Important Public Policies Are Advanced by Awarding Reasonable Fees to Skilled Class Counsel .............................................................................22

C.      The Enhancement Award Is Reasonable ..............................................................22

D.      The Settlement Administrator's Expenses Should Be Approved ..........................23

VI.      CONCLUSION .................................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471 (10th Cir. 1977) ....................................... 16

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................ 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................................ 18

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)............................................... 18

*In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)................................. 17

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ........................................... 17

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)........................................... 22

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)........................................................ 22, 23

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)............................................... 19, 22

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978)........................................... 16

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)....................................... 19

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ........................................... 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............................................................... passim

## STATE CASES

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000)........................ 16

*Bihun v. AT&T Information System*, 13 Cal. App. 4th 976 (1993)............................................... 20

*California Grape Etc. League v. Industrial Welfare Com.*, 268 Cal. App. 2d 692 (1969) ........................... 22

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ................................................................. 19

*Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008) ................................................... 20

*Daar v. Yellow Cab Co.*, 67 Cal. 2d 695 (1967).................................................................... 22

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1995)........................................... 16

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001)........................................................................ 18

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (2000) ................................................................. 22

*Ramirez v. Yosemite Water, Inc.*, 20 Cal. 4th 785 (1999) ....................................................... 22

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)....................................... 22

*Serrano v. Priest*, 20 Cal. 3d 25 (1977)........................................................................ 14, 17, 18, 20

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224 (2001)...........................................................17

**STATUTES**

Labor Code §§ 203 and 226 ...........................................................................................................3

**OTHER AUTHORITIES**

7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 ............................................18

Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 (2008) ........................................14

<u>**NOTICE OF MOTION AND MOTION**</u>

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on May 15, 2023 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 4 of this Court, located at 2500 Tulare Street, 7th Floor, Fresno, California 93721, before the Honorable Jennifer L. Thurston, plaintiff Jeremy R. Lusk ("Plaintiff") hereby does and will move the Court to grant, pursuant to Rule 23, Federal Rules of Civil Procedure, final approval of the Parties' Third Amended Joint Stipulation of Class Action Settlement Agreement and Release of Claims (the "Settlement") (ECF 87-1), and entry of judgment in accordance with the Settlement.

Plaintiff makes this motion on the grounds that the Settlement, which was reached after arm's-length negotiations by counsel for Plaintiff and the Class, and counsel for Defendants Five Guys Enterprises, LLC and Encore FGBF, LLC (collectively, the "Defendants") (Plaintiff and Defendants, collectively, the "Parties), is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement has been made to date), and should be given final approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The motion is based on this notice of motion and motion; the following memorandum in support of the motion; the accompanying declarations of Shaun Setareh and Jarrod Salinas; the declaration of Jeremy R. Lusk (ECF 37); the proposed form of Order Granting Motion for Final Approval of Class Action Settlement and Entering Judgment; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

**I.    INTRODUCTION/SUMMARY OF ARGUMENT**

The Parties' settlement of this wage-and-hour and Fair Credit Reporting Act ("FCRA") class action (the "Settlement") meets the criteria for final approval. The Settlement fairly resolves Plaintiff's claims that Defendant violated California wage-and-hour laws by failing to: pay him and the settlement class for off-the-clock work; provide them with compliant meal and rest periods; provide reimbursement of necessary expenditures; provide them with compliant wage statements; and pay their final wages on time. The Settlement also fairly resolves Plaintiff's claim that Defendants violated the FCRA by obtaining employment applicants' authorization to procure background check reports through the use of a disclosure forms that did

not comply with the FCRA's requirements.  The Settlement is the product of arm's-length negotiations by experienced counsel after significant discovery, and recognition of the strengths and weaknesses of each side's positions.  The Settlement has received the overwhelming support of the Class, with not a single objection to the Settlement made to date.

The Settlement, in the gross amount of $1,200,000.00, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Specifically:

- ▪ Class Counsel (who are highly experienced handling complex FCRA and wage-and-hour class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement.  (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 8.)

- ▪ The Settlement is consistent with the strengths and weaknesses of Plaintiff's claims given the risk, expense, complexity, and likely duration of further litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- ▪ The Class responded overwhelmingly favorably to the Settlement.  The Settlement Administrator has received **no** opt-out requests and **no** objections from the 2,292 Class Members who received notice of the Settlement.  (Declaration of Jarrod Salinas with Respect to Notice and Settlement Administration ("Salinas Decl."), ¶¶ 8-9.)  Thus, the Parties respectfully submit that final approval of the Settlement should be granted and judgment entered accordingly.

## II.    BACKGROUND

At the times relevant to the action, Defendants operated Five Guys restaurant franchises in California.  (https://restaurants.fiveguys.com/ca.)  During the applicable limitations periods here, Defendants estimate that they employed approximately 2,292 non-exempt employees in California.  (Salinas Decl., ¶ 5.)

Plaintiff alleges that while working as an hourly, non-exempt employee for Defendants, Plaintiff and class members were not always permitted to take 30-minute meal breaks as it would be too busy for them to do so.  (ECF 13 at 5-6.)  Plaintiff further alleges that Plaintiff and class members were not always permitted to take 10-minute rest breaks for each 4-hour work period or major fraction thereof as it would be too busy

for them to do so.  (*Id.* at 5.)  Plaintiff alleges that he and class members were required to perform work off-the-clock as they would have to clock out but continue to perform work, such as counting out the cash register, which may take up to twenty minutes.  (*Id.* at 6.)

Plaintiff also alleges that he and class members were required to utilize their own personal vehicles to perform their job duties, such as travelling to and from other restaurants owned by Defendants to pick up food and supplies.  (*Id.*)  Defendants did not reimburse them for utilizing their own personal vehicles to do so.  (*Id.*)

Plaintiff also alleges claims under Labor Code §§ 203 and 226 and the UCL derived from the foregoing claims for failure to pay for all time worked, failure to provide legally compliant meal and rest breaks, failure to reimburse, and failure to provide meal and rest periods.  (*Id.* at 42-47.)

Plaintiff finally alleges that Defendants obtained his and class members' employment applicants' authorization to procure background check reports through the use of a disclosure form that did not comply with the FCRA's, CCRAA's, or ICRAA's requirements.[1]  (*Id.* at 10-29.)

Defendants deny all liability and that the policies allegedly giving rise to these claims are unlawful. (Setareh Decl., ¶ 11.) Defendants further assert that class certification is improper other than for settlement purposes. (*Id.*)

Plaintiff obtained data about the claims and defenses, including training material, employee handbooks policies, time and punch data, and compensation records. (ECF 86 at 14.) Before the mediation, the parties each investigated the claims asserted, the legal authorities supporting and challenging them, and prepared detailed mediation briefs. (*Id.*; Setareh Decl., ¶ 9.)

As described in the Plaintiff's Fourth Amended Motion for Preliminary Approval, the Settlement was only reached after an extended negotiation process.  (ECF 86 at 23; Setareh Decl., ¶ 8.)  The Parties participated in a mediation with Deborah Crandall Saxe, Esq., a well-recognized mediator, on October 10, 2018. (*Id.*)  At and after the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiffs' claims, and the legal bases for the claims and defenses. (*Id.*)  Ultimately, October 12, 2018, the Parties agreed to resolve this matter on a class-wide basis. (*Id.*)

On April 1, 2019, Plaintiff filed his original Motion for Preliminary Approval of Class Action

---

[1] Verified discovery responses later established the Defendants had not actually run any background checks on any employees or applicants, including Plaintiff.  (ECF 87 at 10.)

Settlement ("Preliminary Approval Motion").  (ECF 36.)  On December 23, 2019, the Court denied Plaintiff's motion without a hearing and identified several issues that needed to be addressed before Plaintiff's next attempt in its Order Re Preliminary Fairness Evaluation.  (ECF 43.) On May 18, 2020, Plaintiff filed a First Amended Motion for Preliminary Approval, which addressed the issues raised by the Court.  (ECF 52.)  However, on October 19, 2020, the Court again denied Plaintiff's motion without a hearing and identified several issues that needed to be addressed before Plaintiff's next attempt.  (ECF 55.) On February 26, 2021, Plaintiff filed a Supplemental/Second Amended Motion for Preliminary Approval. (ECF 61.)  On June 1, 2021, the Court denied Plaintiff's motion. (ECF 66.)  On September 25, 2021, Plaintiff filed a Third Amended Motion for Preliminary Approval.  (ECF 75.)  On January 24, 2022, the Court denied Plaintiff's motion. (ECF 81.)  On July 25, 2022, Plaintiff filed a Fourth Amended Motion for Preliminary Approval. (ECF 86.)  On October 3, 2022, the Court approved Plaintiff's amended motion without a hearing in its Order on Plaintiff's Fourth Amended Motion for Preliminary Approval.  (ECF 93.) The Court set the Final Approval Hearing for March 27, 2023 at 1:30 p.m. in Courtroom 2.  (*Id*. at 25.)  On January 26, 2023, this case was reassigned to Hon. Jennifer L. Thurston.  (ECF 95.)  On January 27, 2023, the Court granted the Parties' stipulation to continue the Final Approval Hearing to May 15, 2023 at 1:30 p.m. in Courtroom 4.  (ECF 96.)

**III.    THE SETTLEMENT**

The following is a summary of the material elements of the Settlement.

**A.    The Settlement Class**

Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following Classes were certified:

- **Settlement Class**: All persons who have been employed in California by Defendants as hourly-paid or "non-exempt" employees, whether directly or through an employment agency or a professional services organization, at any time during the period from August 22, 2013 through May 24, 2019.

   - **Waiting Time Penalty Subclass**: All persons who have been employed in California by Defendants as hourly-paid or "non-exempt" employees, whether directly or through an employment agency or a professional services organization, at any time during the period from August 22, 2014 through May 24, 2019 and whose employment with Defendants has been terminated at any time during this period.

o **Wage Statement/PAGA Penalty Subclass**: All persons who have been employed in California by Defendants as hourly-paid or "non-exempt" employees, whether directly or through an employment agency or a professional services organization, at any time during the period from August 22, 2016 through May 24, 2019.

(ECF 93 at 24.)  There are 2,292 unique Settlement Class Members.  (Salinas Decl., ¶ 3.)

**B.      Notice Process**

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement and appointed Phoenix Settlement Administrators ("Phoenix"), to administer the Settlement.  (ECF 93.)  The Parties implemented the Court's directions in this regard.

On October 28, 2022, counsel for Defendant provided Phoenix with a data file from Defendant containing the names, last known mailing addresses, Social Security numbers, dates of employment, and workweeks for each Class Member ("Class List") during the Class Period.  (Salinas Decl., ¶ 3.) The final mailing list contained 2,292 individuals identified as Class Members.  (*Id.*)

On October 31, 2022, Phoenix conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible. (*Id.*, ¶ 4.) A search of this database provides updated addresses for any individual who has moved in the previous four (4) years and notified the U.S. Postal Service of their change of address.  (*Id.*)  On November 15, 2022, Phoenix mailed the Notice via U.S. first class mail to all 2,292 Class Members on the Class List.  (*Id.*, ¶ 5, Ex. A.)

As of April 9, 2023:

• 326 Class Notices have been returned to Phoenix as undeliverable without a forwarding address. (*Id.*, ¶ 6.)  Phoenix performed advanced address research for these undeliverables, but could not update 28 addresses, and re-mailed 298 Notices to a new address. (*Id.*) Of the re-mailed 298 Class Notices, 27 were returned as undeliverable a second time. (*Id.*)

• Phoenix has received <u>no</u> Opt-Outs.  (*Id.*, ¶ 8.)  The Response Deadline was December 30, 2022. (*Id.*)

• Phoenix has received <u>no</u> Objections. (*Id.*, ¶ 9.) The Response Deadline was December 30, 2022. (*Id.*)

**C.      Maximum Settlement Amount and Distributions.**

The Settlement creates a Gross Settlement Amount ("GSA") of $1,200,000.00.  (ECF 87-1 at 7, ¶ 13.) The GSA includes all Individual Settlement Payments (including any employee share of payroll taxes), any Class Representative Service Award, the PAGA Payment, Claims Administration Costs, and the Class

Counsel Payments for Fees and Reimbursement of Costs.  (*Id.*)

Class Counsel are only seeking $ 16,657.41 in costs.  (*Id.*, ¶ 12.)  After all previously anticipated court-approved deductions from the GSA, a Net Settlement Amount of $750,842.59 is estimated to be available to pay the Class Members' Settlement Shares.  (*Id.*)

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will receive a settlement check payment. To fairly allocate settlement funds based on the Qualified Claimant's dates of employment as a Class Member, 60% of the NSA will be allocated to all Class Members, 25% of the NSA will be allocated to Class Members with a claim under Labor Code section 203 (i.e., the Waiting Time Penalty Subclass), and 15% of the NSA will be allocated to Class Members with a claim under Labor Code sections 226 (failure to provide accurate itemized wage statements) and 2698 *et seq.* (PAGA) (i.e., the Wage Statement/PAGA Penalty Subclass). (ECF 87-1 at 9, ¶ 15(a)). The distributed payments will be calculated as follows:

- **Base Settlement Ratio Calculation.** The Claims Administrator shall assign to each Class Member a "Base Settlement Ratio," which shall be a fractional number comprised of (i) that Class Member's Individual Work Weeks as the numerator, and (ii) the aggregate total of all Class Members' Individual Work Weeks as the denominator. (*Id.*, ¶ 15(b).) The Claims Administrator shall assign to each Class Member the "Base Settlement Share," which shall be calculated by multiplying that Class Member's Settlement Ratio by 60% of the NSA.  (*Id.*)

- **Waiting Time Penalty Subclass Ratio Calculation.** The Claims Administrator shall assign to each Waiting Time Penalty Subclass Member a "Waiting Time Penalty Subclass Settlement Ratio," which shall be a fractional number comprised of (i) that Waiting Time Penalty Subclass Member's Individual Work Weeks during the Waiting Time Penalty Subclass Period as the numerator, and (ii) the aggregate total of all Individual Work Weeks during the Waiting Time Penalty Subclass Period for Waiting Time Penalty Subclass Members as the denominator. (*Id.*, ¶ 15(c).) The Claims Administrator shall assign to each such Waiting Time Penalty Subclass Members an additional amount, the "Waiting Time Penalty Subclass Settlement Share," equal to his or her Waiting Time Penalty Subclass Settlement Ratio multiplied by 25% of the NSA. (*Id.*)

///

- **Wage Statement/PAGA Penalty Subclass Ratio Calculation.** The Claims Administrator shall assign to each Wage Statement/PAGA Penalty Subclass Member a "Wage Statement/PAGA Penalty Subclass Settlement Ratio," which shall be a fractional number comprised of (i) that Wage Statement/PAGA Penalty Subclass Member's Individual Work Weeks during the Wage Statement/PAGA Penalty Subclass Period as the numerator, and (ii) the aggregate total of all Individual Work Weeks during the Wage Statement/PAGA Penalty Subclass Period as the denominator. (*Id.*, ¶ 15(d).) The Claims Administrator shall assign to each such Wage Statement/PAGA Penalty Subclass Member an additional amount, the "Wage Statement/PAGA Penalty Subclass Settlement Share," equal to his or her Wage Statement/PAGA Penalty Subclass Settlement Ratio multiplied by 15% of the NSA. (*Id.*)

The sum total of a Class Member's Base Settlement Share plus the Waiting Time Penalty Subclass Settlement Share, if any, plus the Wage Statement/PAGA Penalty Subclass Settlement Share, if any, is referred to as the "Settlement Share" for that Class Member. (*Id.*, ¶ 15(e).) Thus, Wage and Hour Settlement Class Members will be compensated based on the number of eligible workweeks worked. (*Id.*)

The entire GSA will be paid out; none of it will revert to Defendant. Those funds that are represented by Settlement checks that are uncashed after 180 days will be sent to the State of California Unclaimed Wages Fund to be held in the name of the class member. (*Id.*, ¶ 44.)

## D. Scope of the Class Member Releases.

The Parties agree that it is their intent that the Class Representative (and not the Class Members) shall be deemed to have fully, finally, and forever released the Released Parties from all Released Claims, as defined in paragraph 18. (*Id.*, ¶ 19.) Such release includes a California Civil Code Section 1542 ("Section 1542") waiver, which releases all claims, known or unknown, within the definition of Released Claims, irrespective of the factual or legal basis for such claims. (*Id.*)

It is also the Parties' intent that the terms set forth in the Stipulation will release any further attempt, by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind by each and all of the Class Members who did not timely and properly opt out, to obtain a recovery based on each and all of the allegations in the First Amended Complaint in this matter, including participating in any class or collective action, for harms arising during the Class Period. (*Id.*, ¶ 18.)

The Class Notice explained that it does not have the effect of waiving any and all claims a Class Member may have against Defendants. (Salinas Decl., ¶ 5, Ex. A.)  It only waives claims encompassed within the allegations of the First Amended Complaint, which shall be deemed to have been fully, finally, and forever released against the Release Parties, including the Class Representative. (*Id*.)

## IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A.    The Best Practical Notice of Settlement Has Been Provided to the Class

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as is necessary to protect the due process rights of Class Members.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process).  Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated website (www.Luskvhenkel.com) that included the Notice of Proposed Class Action Settlement and Final Approval Hearing, other Settlement-related information, and the entire ECF Docket for this case.  Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and Final Approval Hearing informed Class Members of the pendency of the action and their right not to participate in the Settlement.  *See Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

This lack of governmental objection to the Settlement further supports final approval.

### B.    The CAFA Notice Requirements Have Been Satisfied

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), on or around January 20, 2023, Defendants provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the States in which Class Members reside: California, Delaware, Texas, Arkansas, Arizona, Colorado,

Florida, Georgia, Idaho, Illinois, Kansas, Louisiana, Michigan, Missouri, Ohio, Nevada, New York, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin, Nebraska, South Carolina, and Mississippi. (Declaration of Andrew H. Woo ("Woo Decl."), ¶¶ 1-2, Ex. A.) Consistent with 28 U.S.C. § 1715, the Notice included a copy of the complaint, notices of any scheduled judicial hearings, notices to class members, the settlement agreement, final judgment, the names of all class members residing in each state and the estimated proportionate share of the claims of those remembers, and the court orders relating to the settlement. (*Id*., ¶ 4.) "[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010). To date, no federal or state official has raised such concerns. (Woo Decl., ¶ 5.)

## C.    Final Approval Standards under Rule 23

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining

class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### D. The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length negotiations that took place before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

### 1. Class Members' Response to the Settlement Is Positive

Out of 2,292 Class Members, not a single Class Member objected to the Settlement to date. (Salinas Decl., ¶ 9.) *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, no Class Members have opted out of the Settlement to date. (Salinas Decl., ¶ 8.)

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-

out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

### 2. The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Before any mediation, Class Counsel reviewed hundreds of pages of documents, as well as payroll and timekeeping data, produced by Defendants. (ECF 87 at 7, ¶ 10.) The Parties also spent significant time preparing for and taking part in mediation.

### 3. Counsel's Endorsement of the Settlement Is Entitled to Great Weight

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiff's Counsel and Defendant's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (Setareh Decl., ¶ 24.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4. The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private

mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at \*20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation.  (Setareh Decl., ¶¶ 7- 9.)  Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence.  (*Id.*)

### 5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.

#### a.    The Value of the Settlement Favors Final Approval.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$1,200,000—is a fair and reasonable result, especially in light of the defenses raised by Defendants, including that their meal and rest period policies were legally compliant and that they provided breaks in accordance with California law.  (Setareh Decl., ¶¶ 8-9.)  Moreover, the Net Settlement Amount amounts represent a reasonable, meaningful recovery for Class Members.

Accordingly, the $1,200,000 Gross Settlement Amount is well within the range of reasonableness.

///

1
2

    **b. Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

3
4

   When a party continues to deny liability, there is an inherent risk in continuing litigation.  In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at \*5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation.  *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at \*4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at \*5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

   Similarly here, Defendants continue to contest liability and the propriety of class certification.  Defendants' denial of liability, paired with their diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.  (Setareh Decl., ¶¶ 13-20.)

   Moreover, this class action involves intricate legal and factual questions.  Litigating these complex claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence.  (*Id.*)  Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues.  (*Id.*)  Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials.  (*Id.*)  As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay.  (*Id.*)  In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members.  Such a result benefits the Parties and the court system.

**V. THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD**

**A. The Legal Standard for Attorneys' Fee Awards**

California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a

1   fee request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class;

2   (ii) class counsel's experience, reputation and ability; (iii) the time and labor required by the litigation; (iv)

3   whether class counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the

4   contingent nature of the litigation. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v.*

5   *Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (identifying similar criteria); *see also* Herr,

6   MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 at 524-27 (2008) (survey of federal criteria similar to

7   California criteria).

8          **B.      The Fee Award Is Reasonable and Should Receive Final Approval**

9                  **1.      An Excellent Result Was Achieved on Behalf of the Class**

10          The benefit achieved on behalf of class members defines a primary yardstick against which any fee

11  motion is measured. *See Serrano*, 20 Cal.3d at 49; *accord Vizcaino*, 290 F.3d at 1048.

12          The Parties reached a Settlement in good faith after negotiating at arm's-length with a professional

13  mediator at mediation. (Setareh Decl., ¶ 8.) Settlement occurred only after extensive informal discovery

14  commenced. (*Id.*, ¶ 9.) Through informal discovery in advance of mediation, Defendants provided Class

15  Counsel with documents, including copies of all applicable personnel and payroll policies, and records

16  reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as

17  payroll and time clock data for the putative class. (*Id.*)

18          The information obtained through Plaintiff's informal discovery in advance of mediation including

19  Defendant's employee records and the additional, detailed data about class composition produced for

20  mediation, were sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. (ECF 87, ¶ 10.)

21  And, notably, approval of a class action settlement does not require that discovery be exhaustive. *See*, *e.g.*, *In*

22  *re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved

23  where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact

24  that settlement results from arm's-length negotiations following "relevant discovery" creates "a presumption

25  that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

26          With respect to the claims asserted on behalf of the settlement Class in this case, there are significant

27  risks that support the reduced compromise amount. First, there is risk that class certification could have been

28  denied by way of contested motion. (ECF 87, ¶ 17.) Indeed, while some courts have certified cases of this

1   nature by way of contested motion, including cases brought by Plaintiff's counsel, there are also numerous

2   decisions where courts have declined to certify such claims. (*Id.*)  As such, while Plaintiff believes that his

3   claims are amenable to class treatment for purposes other than settlement, Defendants fully intended to

4   contest any motion for class certification and the possibility that class certification might be denied factored

5   into Plaintiff's evaluation of the inherent risks of further litigation.  (*Id.*)  This risk is heightened by the fact

6   that the Parties would have been forced to engage in additional and protracted written discovery, would need

7   to take further depositions, and would have needed to conduct additional factual investigations in order to

8   gather further evidence in support of their positions.  (*Id.*)

9        Second, there is a risk that Defendants could have obtained summary judgment as to Plaintiff's

10   claims. (Setareh Decl., ¶ 13.)  For example, Defendants contend that their timekeeping, meal and rest break,

11   and expense reimbursement policies are legally compliant and that they are, in any event, not subject to

12   common proof.  (*Id*., ¶ 14.)

13        Third, even if the Court granted class certification, prevailing at trial would require further risky

14   litigation and likely involve an expensive battle of the experts. (*Id*., ¶ 17.)  Finally, Defendants would certainly

15   appeal any verdict favorable to the class, resulting in further delay and the risk that a favorable verdict would

16   be overturned on appeal.  (*Id*., ¶ 19.)

17        When facing an uncertain resolution of the claims in this Action, settlement is all the more reasonable.

18   Indeed, the Gross Settlement Amount will provide Settlement Class members with real and timely payments as

19   opposed to the largely speculative awards that may or may not otherwise be obtained based on the various

20   litigation risks going forward should the proposed Settlement not be approved. (ECF 87, ¶ 15.)  Continued

21   litigation of this lawsuit presented Plaintiff and Defendants with substantial legal risks that were (and continue

22   to be) very difficult to assess.

23        In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable

24   recovery for the Settlement Class Members.  The settlement amount is, of course, a compromise figure.  By

25   necessity it took into account risks related to liability, damages, and all the defenses asserted by the

26   Defendants.  Moreover, each settlement Class Member has been given the opportunity to opt out of the

27   Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under

28   this Settlement, to pursue their own claims.

The highest estimated Individual Settlement Share is $2,721.89, and the average is $327.59. (Salinas Decl., ¶ 13.)  The value of these amounts reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendants could bring to bear to challenge liability, this is not an inconsequential sum in these challenging economic times.  And, confirming the fundamental fairness of the settlement, Class Members who worked for Defendants longer will receive more of the NSA. (Setareh Decl., ¶ 21.) After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable.  Based on information provided by Defendants during the litigation, as well as other investigation, Plaintiffs' counsel estimates that the liability exposure on the unpaid wages and reimbursement claims is $2,935,317.85 without considering statutory and civil penalties.  (Setareh Decl. ¶ 12.) Thus, the GSA allocation of $1,200,000 represents 40.9% of the damages the class could reasonably have expected to recover at trial.  While Plaintiff would certainly have preferred to recover more (and Defendants would have preferred to pay less), this outcome is favorable considering the risks of further litigation.  On that basis, it would be unwise to pass up this settlement opportunity.

How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally*, *Vizcaino*, *supra*.  State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness.  *See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App.4th 1135, 1152-53 (2000) (only nine objectors from a class of 5,454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5,400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import").  The deadline to object was December 30, 2022, and as of that date, no objections have been received from any Class Member, clearly indicating that Class Members approve of the terms of the Settlement.

### 2.    The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In*

*re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here and have regularly litigated employment law class actions. (Setareh Decl., ¶¶ 23-44.)

### 3. The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal.3d at 49; *accord Vizcaino*, 290 F.3d at 1048-50. Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the settlement result. (Setareh Decl. ¶¶ 30-44.)

Class Counsel expended considerable time and resources in litigating this matter. The work done by the attorneys working on this case includes initial investigation of the case and developing the facts and theories regarding the off-the-clock claims, meal and rest break claims, and background check claims, drafting pleadings, conducting formal and informal discovery to obtain from Defendants the applicable employment policies, pay policies, timekeeping policies, meal and rest break policies, and class data, analyzing time and pay records, performing a damage analysis, defending Plaintiff's deposition, conducting a review of the record, working with an expert to analyze the data produced by Defendants, and preparing a thorough mediation brief and damages analysis in preparation for mediation, travelling throughout California including to hearings in this matter; engaging in contentious arm's-length negotiation at the mediation, and working with Defendants to prepare the Settlement Agreement, related forms, and approval motions. (Setareh Decl., ¶ 29, 31.) The "time and labor" criterion weighs in favor of an award of the requested fees.

### 4. The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered. *Serrano*, 30 Cal.3d at 49, *accord Wershba v. Apple Computer*, 91 Cal.App.4th 224, 245 (2001). Here, complexity of legal issues was a neutral factor. Accordingly, the complexity of the legal issues weighs in favor of the fees which are presumptively reasonable at 25% of the GSA.

///

**5.      Class Counsel Assumed Substantial Risk**

The novelty and challenges presented by a class action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion. *See Serrano*, 20 Cal.3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent as a factor weighing in favor of approving a negotiated fee award that approximates market rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001).

Courts have found that similar classes do not satisfy predominance for class certification purposes. Class Counsel nevertheless faced that risk, and an excellent result was obtained.

**6.      The Fee is Reasonable Under the Common Fund Doctrine**

Courts in the Ninth Circuit and California generally use the "percentage method" rather than the lodestar approach when awarding attorneys' fees in a common fund settlement. *See* 7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of percentage method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method). *See generally*, *Serrano*, 20 Cal.3d at 25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

**a.      The standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases**

According to a leading treatise on class actions, "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *See* Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03.  Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with ***thirty to forty percent commonly awarded in cases where the settlement is relatively small***. *See id*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement

1    funds of under $10 million).

2          The proposed 25%-of-the-common-fund fee award is consistent with the average fee award in class

3    actions. Awards of 33 percent or more are common in court-approved class actions litigated and settled by

4    Class Counsel and other firms across the state.  (Setareh Decl., ¶ 28.)  Class Counsel has been issued one-third

5    of the settlement amount in fees in a number of cases in the Northern District, including recently in

6    *Burnthorne-Martinez v. Sephora USA, Inc*., 2018 WL 5310833, at *3 (N.D.Cal., 2018), *Garza v. Brinderson*

7    *Constructors L.P.,* Northern District of California Case No. 5:15-cv-05742-EJD ECF No. 80, and *Fronda v.*

8    *Staffmark Holdings, Inc.*, 2018 WL 2463101, at *13 (N.D.Cal., 2018). (*Id.*)

9          The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of

10   the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark"

11   percentage of 25% of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.

12   1989); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona*

13   *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the

14   risks overcome, the benefits obtained and the work necessary to achieve those results supports such an

15   adjustment of the benchmark.  In fact, while the Ninth Circuit identified 25% as a fee percentage that is

16   presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a

17   fund as a fee award.  *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ("Empirical studies

18   show that, regardless whether the percentage method or the lodestar method is used, fee awards in class

19   actions average around ***one-third*** of the recovery.") (emphasis added).  Class Members have had the

20   opportunity to object to the proposed award of fees and costs (or any other aspect of the Settlement) and have

21   not submitted any objections.  Even were this not so, Class Counsel's election to seek only 25% of the GSA

22   in attorneys' fees is presumptively reasonable.

23                          **b.**     **Plaintiff seeks 25% of the Settlement Fund in fees and costs less than**
                                       **$20,000.**
24

25          The compensation sought for Class Counsel is also fair and reasonable.  Here, the gross settlement

26   fund obtained through the efforts of Class Counsel is $1,200,000.  Class Counsel has elected to request no

27   more than 25% in fees from the GSA.  Class Counsel has agreed to request no more than $20,000 in costs.

28   Plaintiff has actually incurred costs of $16,657.41 in this matter, including filing fees, mediation fees, expert

1    costs, Westlaw fees, PACER charges, and travel expenses. (Setareh Decl., ¶ 27.)

2    **7.    A Lodestar Analysis Supports the Requested Fee**

3    Despite the widely recognized limitations of the so-called "lodestar" method, California and federal

4    courts recognize the utility of a lodestar "cross-check." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th

5    19, 46 (2000).  A lodestar "cross-check" analysis typically happens in three steps. *Cundiff v. Verizon*

6    *California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must

7    determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation

8    for each attorney involved in the case.  *Serrano*, at 48.  Second, the court sets a reasonable hourly fee to apply

9    to the time expended, with reference to the prevailing rates in the geographical area in which the action is

10   pending. *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a

11   $450 per hour rate for a Southern California litigation attorney).  Finally, a "multiplier" of the base lodestar is

12   set with reference to the factors described in detail in this brief.  Courts often apply a positive multiplier to the

13   lodestar to determine a reasonable fee. *E.g. Vizcaino supra* at 1051 (positive multiplier of 3.65.) Across all

14   jurisdictions, multipliers of up to four are frequently awarded. NEWBERG, §14.03 at 14.  Often, multipliers of

15   greater than four are warranted.

16   Looking at the work of attorneys for Plaintiffs in this matter (***and excluding paralegals***), the lodestar

17   calculation for Setareh Law Group is $324,877.50, calculated as follows:

| Attorney | Bar Year | Hourly Rate | Hours | Total Billed |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $925.00 | 35 | $32,375.00 |
| H. Scott Leviant | 1999 | $925.00 | 30.8 | $28,490.00 |
| William M Pao | 2002 | $900.00 | 123.3 | $110,970.00 |
| Jose Patino | 2010 | $725.00 | 120.85 | $87,616.25 |
| Stacey Shim | 2015 | $550.00 | 12.2 | $6,710.00 |
| Ashley Batiste | 2017 | $475.00 | 41.9 | $19,902.50 |
| Alex McIntosh | 2018 | $425.00 | 7 | $2,975.00 |
| Lilit Ter-Astvatsatryan | 2018 | $425.00 | 47.65 | $20,251.25 |
| Nolan Dilts | 2019 | $400.00 | 28 | $11,200.00 |
| Maxim Gorbunov | 2021 | $325.00 | 13.5 | $4,387.50 |
| **Total** | | | **460.2** | **$324,877.50** |
| Fees Sought | | | | $300,000.00 |
| **Multiplier** | | | | **0.92** |

(Setareh Decl., ¶ 31.)

This lodestar figure is in line with the requested fee, requiring a multiplier of 0.92. (*Id.*)  This is in the typical multiplier range typically applied by district courts. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier).

Compared to a lodestar of approximately $324,877.50 based on contemporaneously recorded and reasonably projected hours, the total compensation to Class Counsel is consistent with their lodestar.  The multiplier necessary to reach the total requested compensation is approximately **0.92**, a multiplier less than the multipliers of 3 or higher that are routinely approved in class settlements.  Accordingly, the lodestar cross-check affirms that the fee award that has been preliminarily approved does in fact fall easily within the range of reasonableness. (*Id.*)

The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002).  As a corollary, a defendant willing to recognize a potential error and settle at an early stage would face the increased risk that an early settlement overture would be rejected.  That did not happen here, in part because a percentage of the fund award encourages efficient litigation.  The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Id.*

The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d 938, 967 (9th Cir. 2003).  This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of others. *Paul,*

*Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

It is only fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her *pro rata* share of attorney's fees, and Plaintiff's request for fees here means that Class Counsel seek an amount of fees less than the amount Class Counsel would likely receive if they represented each class member individually. Typical contingent fee contracts of plaintiffs' counsel provide for attorney's fees of about 40% of any recovery obtained for a client. (Setareh Decl., ¶ 46.) It would be unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief for hundreds of class members. To the contrary, equitable considerations dictate that Class Counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation. The result achieved by Class Counsel merits an award of attorney's fees equal to 25% of the total recovered value in this case.

**8.    Important Public Policies Are Advanced by Awarding Reasonable Fees to Skilled Class Counsel**

Wage and hours laws "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." *California Grape Etc. League v. Industrial Welfare Com.*, 268 Cal. App. 2d 692, 703 (1969). California's overtime laws "are to be construed so as to promote employee protection." *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 340 (2004) (citing *Ramirez v. Yosemite Water, Inc.*, 20 Cal. 4th 785, 794 (1999)). Courts have also long acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 434-435 (2000) (citing *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695, 703-704 (1967)). As a practical matter, therefore, privately initiated class actions are the primary mechanism for enforcement of California's Labor Code protections.

**C.    The Enhancement Award Is Reasonable**

Enhancement awards serve to reward the named plaintiffs for the time and effort expended on behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-Cola*, for example,

1    the court approved enhancement awards of $300,000 to each named plaintiff in recognition of the services

2    they provided to the class by responding to discovery, participating in the mediation process and taking the

3    risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl.*

4    *Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

5            Here, Class Counsel request that the Court grant an enhancement award of $15,000 to Plaintiff. The

6    amount of the enhancement award requested for Plaintiff is reasonable given the risks undertaken by him.

7    Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement

8    achieved by Plaintiff.  Additionally, Plaintiff was actively involved in the litigation and settlement

9    negotiations of this Action. (ECF 37 at 2-3, ¶¶ 5-13; Setareh Decl., ¶ 47.) Plaintiff worked diligently with

10   counsel to prepare the action, traveled to and attended the mediation, sat for a deposition, and conferred with

11   counsel regarding settlement negotiations. (*Id.*)  Moreover, Plaintiff undertook to prosecute the cases despite

12   the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it

13   against him. (Setareh Decl., ¶ 47.) Finally, by the time Plaintiff is paid any recovery for the Settlement of this

14   action, it will have been more than 6 years since the filing of his original complaint. (*Id.*) The requested

15   enhancement award is reasonable and should be approved.  (*Id.*)

16           **D.    The Settlement Administrator's Expenses Should Be Approved**

17           The expenses for the Settlement Administrator, Phoenix, will not exceed $17,500.00. (Salinas Decl., ¶

18   16, Ex. B.)  Phoenix's costs to administer this settlement are in line with the "reasonable" amount allocated in

19   the Settlement Agreement of an estimated $30,000. (ECF 87-1 at 8, ¶ 15(d).)  This amount is a fair, adequate

20   and reasonable amount for settlement administration fees in this case.  (Setareh Decl., ¶ 48.)

21   **VI.    CONCLUSION**

22           For the foregoing reasons, the Court should grant final approval of the Settlement and the requested

23   attorneys' fees, reimbursement of litigation costs, and enhancement award for Plaintiff.

24   DATED:  April 12, 2023                    SETAREH LAW GROUP

25                                             */s/ Jose Maria D. Patino, Jr.*
                                               _____
26                                             SHAUN SETAREH
                                               WILLIAM M. PAO
27                                             JOSE MARIA D. PATINO, JR.
                                               Attorneys for Plaintiff
28                                             JEREMY R. LUSK